## McGUIRE *v.* RABAUT.

1. APPEAL AND ERROR—APPENDIX—TRANSCRIPT.

A fair presentation of issues to the Supreme Court, as required by court rule, is not made, where appendix does not contain testimony of driver of car in which plaintiff was riding when collision occurred with defendant's car at intersection, necessitating resort to single copy of typewritten transcript (Court Rule No 70, § 5 [b], as added October 30, 1956).

2. AUTOMOBILES — THROUGH HIGHWAYS — ANTICIPATION OF NEGLIGENCE.

The driver on a through highway is entitled to assume that drivers on subordinate streets will yield him the right-of-way and he is not bound to anticipate unlawful or negligent acts on their part but he must exercise reasonable care for his own protection.

3. SAME—THROUGH HIGHWAYS—YIELDING RIGHT-OF-WAY.

A driver on a through highway is entitled to assume that his right-of-way would not be contested by a driver upon a subordinate street until it becomes clear that the latter is going to challenge or obstruct the right-of-way and it then becomes the duty of the driver on the through highway to avoid the impending collision.

---

REFERENCES FOR POINTS IN HEADNOTES

[2] 5A Am Jur, Automobiles and Highway Traffic §§ 304, 306.
[3, 6] 5A Am Jur, Automobiles and Highway Traffic § 306.
Right-of-way at street or highway intersections. 21 ALR 974, 37 ALR 493, and 47 ALR 595.
—— as dependent upon or independent of care or negligence. 136 ALR 1497.
[4, 7] 5A Am Jur, Automobiles and Highway Traffic § 1095.
[5] 53 Am Jur, Trial § 557.
[8] 5A Am Jur; Automobiles and Highway Traffic. § 1097.

4. Same—Through Highway—Stopping—Instructions.

> Instruction that driver on through street need not look to his right at an intersection, since he is entitled to believe he is protected from danger from that direction by a stop sign, although error, was not reversible, where it could not have affected the result under circumstances presented, showing that the intersecting street was narrower than the distance required to stop a car travelling at a lawful speed.

5. Trial—Erroneous Instructions.

> It is presumed that a jury may have followed an instruction which is erroneous if 2 conflicting instructions are given, one of which is erroneous.

6. Automobiles—Through Highway—Yielding Right-of-Way—Intersections.

> The purpose of a through highway, to move a large volume of traffic at relatively high speeds, is incapable of fulfillment if driver thereon be required to drive so that he could stop in case drivers on subordinate intersecting streets were not to yield the right-of-way at each intersection.

7. Same—Erroneous Instructions—Through Highways—Observation at Intersection.

> Verdict for defendant is not disturbed notwithstanding erroneous instruction as to defendant driver not being required to make observation to right at blind intersection, where even if a proper instruction had been given, the result could not have been different.

8. Same—Contributory Negligence of Host Driver—Negligence of Defendant.

> Claim that too much emphasis in the instructions was laid upon the contributory negligence of driver of car in which plaintiff was a guest passenger *held,* not to have shown reversible error, where charge as a whole fairly presented the issues and the jury found no negligence on part of defendant.

Appeal from Wayne; Neuenfelt (Lila M.), J. Submitted April 9, 1958. (Docket No. 23, Calendar No. 47,206.) Decided October 13, 1958.

Case by Ruth H. McGuire against Charles Rabaut, McKesson-Robbins, a Maryland corporation, and Bejin Cartage Company, a Michigan corporation,

for injuries sustained as guest passenger upon collision of motor vehicles. Verdict and judgment for defendants. Plaintiff appeals. Affirmed.

*Henry G. Totzke* and *Irving H. Small,* for plaintiff.

*Giltner, Humpsch, Giltner & Miley,* for defendants.

SMITH, J. Here we consider an automobile collision between 2 cars at a "blind" intersection, a term we will in due course explain in some detail. One of the cars was traveling east on a through street, guarded at the intersection before us by a stop sign, the other north upon a subordinate street. For purposes of clarity we will adopt the terminology of prior cases and describe the through-street driver as the favored driver and the other as the subordinate driver.

The accident occurred at the corner of Hastings street and East Milwaukee, in the city of Detroit, about 9:30 on an evening in late April. It was dark. The pavement was wet. Plaintiff was a guest passenger in a car driven north on Hastings street by Mr. J. B. Crane. Defendant Charles Rabaut was driving east on Milwaukee in a truck owned by defendant Bejin Cartage Company and hired by McKesson-Robbins, a Maryland corporation.

Traffic on Hastings street is required to stop before entering into the intersection at Milwaukee street. The stop sign at the intersection of Milwaukee and Hastings was the only traffic control at that point. The corner itself, as we have noted, was described in the record as a "blind" corner. As to the meaning of such expression we quote from the testimony of officer Livingston:

"I should have indicated it as a blind street corner actually. They are quite numerous throughout the

city, especially in the older sections of town. Congress and Larned are wonderful examples. Driving down either way where the buildings are built right up to the sidewalk on all corners, we construe that as a blind corner.   *   *   *

"*The Court:* Let's take the corner going east on Milwaukee and going north—only 2 corners—

"*A.* The corner going north and east I would construe as a blind corner."

The described condition here arises from the fact that a New York Central viaduct, running in a northeasterly-southwesterly direction, crosses directly over Hastings street immediately adjacent to and just south of the Milwaukee street intersection, also crossing Milwaukee just east of the intersection. At the southwest corner of the intersection the exhibits disclose concrete abutments and steel girders obstructing the view to the left (west) of a driver proceeding north on Hastings. Likewise there is a similar obstruction of view for a driver proceeding in an easterly direction on Milwaukee as he seeks to make observation to his right (south) on Hastings. More especially, it would appear from the photographic exhibits that a driver going in a northerly direction in Hastings would have to bring his car to the crosswalk, and thus slightly into the intersection, before he could see to his left whether or not it was safe to proceed, since the steel girders, upon concrete supports, apparently extend into the Milwaukee street crosswalk. The driver proceeding in an easterly direction on Milwaukee is correspondingly handicapped. Thus the record, with ample justification, refers to this corner as a "dangerous" corner. We note, also, in the exhibits, traffic control lights at the intersection, but at the time of the accident such had not been installed.

As the car in which plaintiff was a passenger approached Milwaukee the driver slowed down, he

testified, until he came to a "rolling stop." He looked
to his left, "didn't see anything coming," shifted
gears, moved forward, "and that was all I remember." He thinks he was 4 or 5 feet out into the intersection when he made his observation. When he
woke up, he says, he was in the hospital.*

The favored driver, defendant Rabaut, testified
that, knowing the corner was dangerous, he slowed
slightly (to 20 miles per hour) prior to approaching
the intersection, then "looked to the right, that is
south on Hastings street, and from your point of
vantage there at the crosswalk, I was at the edge of
the crosswalk, you can see 25 or 30 feet down Hastings, and I saw nothing." The collision followed,
it being disputed whether the car hit the truck or
the truck hit the car. Plaintiff was seriously injured.
After some 8 days of trial the case was submitted to
the jury, which returned a verdict for defendants,
upon which judgment was entered. The case is before us upon alleged errors in instructions given.
These will be set forth is due course.

The difficulties in this case, as in other arterial
highway versus subordinate street cases, arise from
an apparent conflict between 2 equally sound and
equally applicable principles of law. The first is
that a driver on an arterial highway is entitled to
assume that subordinate drivers will yield him the
right-of-way. He is not bound to anticipate unlawful
or negligent acts on their part. At the same time,
however, the favored driver must conform to the
standard of due care imposed upon him as well as the

---

* Appellant's appendix contains none of Crane's testimony. To
obtain it we have had recourse to a typewritten transcript of great
length, only one copy of which is available to the court. Such presentation does not meet the "requirements of a fair presentation of
the issues to the court." Court Rule No 70, § 5(b), as added October
30, 1956. See 347 Mich xxx. For elaboration, see *Miller* v. *Allen*,
352 Mich 95, and the supplement attached to our opinion in *Wilks* v.
*Kempf*, 352 Mich 445, 446, 451–453.

rest of mankind, namely, that he shall exercise reasonable care for his own protection. But what does this actually mean in terms of arterial travel? Therein lies our problem. Its importance* to the motoring public may justify its comprehensive reexamination.

It is clear, at the one extreme, that the favored driver is not permitted to lower his head, close his eyes, and charge blindly through intersections on the theory that such is his "right" simply because he is the favored driver. It was Justice Holmes who said that "such words as 'right' are a constant solicitation to fallacy."† The favored driver's rights are not so broad. It remains his duty to exercise reasonable care under the circumstances. We explored this matter in *Krause* v. *Ryan,* 344 Mich 428, 432, holding that:

"It is not necessary in approaching an intersection, as we said in *Arnold* v. *Krug,* 279 Mich 702, 707, that he 'have his car under such control    *    *    *    that he may stop at once and avoid collision with persons who may illegally come into his path.' Lacking notice otherwise, he may assume that others using the highways will comply with the rules of the road and properly posted signs and he is not guilty of contributory negligence in acting upon such assumption. It should not, however, be assumed from the foregoing that he may proceed blindly upon the arterial, secure in the supposition that he can do no wrong. He must remain alert to the hazards surrounding him and with which he is confronting others. We do not propose to attempt an enumeration of the various actions required of him. So far as the question in this case is concerned, he is undoubtedly required to

---

* The publication of the National Safety Council, Accident Facts, 1957 edition, p 49, lists failure to yield the right-of-way as (except for excessive speed) the most important driver violation in fatal accidents in urban areas in the year 1956.

† *Jackman* v. *Rosenbaum Co.,* 260 US 22, 31 (43 S Ct 9, 67 L ed 107).

make observation of the traffic apparently to cross his path from intersecting streets and to act reasonably in the light of such observation."

The favored driver is thus not required to have his car under such control as to be able to avoid collision with a subordinate driver coming illegally into his path. At what point, then, does the second principle (that of exercising reasonable care for his own protection) come into operation, requiring him to take steps to avoid collision with a subordinate driver? Only at that point when his continuing observations (which he must make, despite the fact that he is on an arterial highway) reveal, or should reveal to the reasonably prudent man, an impending danger. It is at this time that his duty of care with respect to the subordinate driver arises, and his post-observation negligence, or lack thereof, is measured by his actions after this point. Consequently, in the case before us the favored driver was entitled to assume, as he approached the Hastings intersection, that his right-of-way would not be contested by a subordinate driver. He was entitled to rely upon this assumption until it became clear to him (or, until, as a reasonable man, considering pertinent surrounding circumstances of traffic and terrain, it should have been clear to him) that a subordinate driver was going to challenge or obstruct his right-of-way. At this point his duty to attempt to avoid the impending collision began. It is from this point onward, and not before, with respect to a crossing subordinate driver appearing in his path, that we scrutinize his acts to determine whether or not he is guilty of negligence for failure to act as a reasonably prudent person, and, in all fairness to him, we must measure his conduct in the light of the emergency then presented, if not of his making.

We come now to the asserted errors in the charge given. With reference to the negligence of the favored driver, the defendant, the court charged, in part, that:

" 'Drivers approaching the trunk line are required to stop before entering the intersection whether anyone is at or near the crossing or in sight on the trunk highway. It is an improved road—usually hard surfaced. Its purpose is to afford rapid transit. The driver is entitled to assume that those approaching it will obey the law and stop. He is not obliged to have his car under such control at each intersecting road that he may stop at once and avoid collision with persons who may illegally come into his path.

" 'On the other hand, he must keep such lookout ahead and to the sides and down intersecting highways as a reasonably prudent person would do in order to discover possible danger and must act carefully upon the existing conditions.' "[*]

The substance hereof was repeated in various forms. However, at one point there was added the instruction that the favored driver was "not required to look to the right because he has good reason to believe that he is protected from danger in that direction by the stop sign." This was error. The favored driver must make observation despite his favored status, as we have seen, and no device or sign will remove this burden from him. The question now facing us is whether this error was prejudicial to the plaintiff. In considering the effect of conflicting instructions, one of which is erroneous, we presume that the jury may have followed that which was erroneous. *In re Bailey's Estate,* 186 Mich 677. Of course, if it appears from the evidence, or by some part of the record, that the error could not have affected the result, that the verdict, under

_____

[*] The court, in its charge, quoted this from *Arnold* v. *Krug, supra* 707, 708.—REPORTER.

proper instructions, could not have been different, we do not reverse. Against such background let us examine the situation in the case before us. The parties agree that the favored driver, some 25 feet west of the intersection, had slowed down to 20 miles per hour and that Hastings street is 28 feet wide at this point. The favored driver also testified, and his testimony is supported by the exhibits, that due to the fact that this is a blind corner he could not see to his right, south on Hastings street, until he reached the crosswalk. As he put it, "You don't see anything until you get to the crosswalk." But, at 20 miles per hour, was it then possible for him to avoid collision if a car northbound on Hastings entered the intersection in his path? We have seen that the favored driver is not required to have his car under such control that he may bring it to a stop at each intersection he approaches upon the theory that some reckless, or semiconscious, or suicidal subordinate driver will dispute his passage. This would bring traffic on arterial highways, for all practical purposes, to a complete stop. At each successive intersection the arterial driver would have to slow down to a few miles per hour, and at blind corners he would be required literally to nudge his car forward into the intersection, until he crossed the threshhold of vision for the subordinate street, lest he not be able to stop instantly should danger threaten. But the purpose of the through highway is to move great volumes of traffic at relatively high speeds. Such purpose cannot be accomplished if our application of the standard of due care does not take into account the unique function of the arterial highway. Thus it was that we said in *Arnold* v. *Krug,* 279 Mich 702, 707, that, "The right-of-way accorded to a driver upon a trunk-line highway is something more than the privilege of going through the inter-

section in advance of a car which reaches it at the same time."

As for the effect of the erroneous instruction, let us recapitulate: Defendant Rabaut was traveling east at 20 miles per hour, close to the southerly curb of Milwaukee. At this speed his statutory stopping distance* upon a dry, smooth road (and Milwaukee, as we have seen, was wet) was 30 feet. This is 2 feet greater than the 28-foot width of Hastings at this point. But this stopping distance is "upon initial application of the service (foot) brake." If we add to this distance as we must, for a realistic appraisal of the situation, the distance traveled during the so-called "thinking time" or "reaction time" of the favored driver (the time required for him to perceive the physical object, appreciate the danger, decide what to do, and then start to do it) we get a far greater total stopping distance. We will not explore this aspect of the matter, since the statutory braking time alone exceeds the width of the intersection, save to note that the total stopping distance at this speed ranges from a distance of some 52 feet, reached by the application of Judge Ralph W. Liddy's well-known and thoughtful computations, to that of approximately 48 feet, computed in accordance with the formula published by the secretary of State of Michigan.† Upon the facts before us, then, we have a situation in which a driver proceeding at a lawful speed and in a lawful manner on an arterial highway is contested in his right-of-way by

---

* CLS 1956, § 257.705 (Stat Ann 1952 Rev § 9.2405).

† See Liddy's "Digital Safety Rule" and booklet "What Every Driver Must Know," Hare and Richardson (1956 edition).

The so-called "reaction" time for an individual depends upon a variety of factors, including his health, age, sensitivity to visual (or auditory) stimulation, elements of distraction, intensity of stimuli, and others. See, generally, Boring, Langfeld, and Weld's Psychology—A Factual Textbook—p 447 ff. Also, McFarland's "Human Factors in Highway Transport Safety," Vol 64 S.A.E. Transactions, p 730 (1956).

a subordinate driver under such circumstances that collision is inevitable. Before the favored driver can even react to the situation and put his foot on the brakes he is across the center line of the subordinate street and into the contested area. Under these circumstances an instruction that the favored driver need not look to his right ("because he has good reason to believe that he is protected from danger in that direction by the stop sign") while erroneous, will not necessitate reversal. The favored driver's negligence in not looking[*] was not, as a matter of law, a proximate cause of the collision. Even had he looked, diligently, there was nothing he could have done, after discovery of the danger, upon these facts, to avoid collision. The deficiency in plaintiff's case lies in the area of proximate cause. We need no more than cite the classic case of *Stacy* v. *Knickerbocker Ice Co.*, 84 Wis 614 (54 NW 1091), wherein it was held that negligence in failing to fence thin ice was not a cause of the death of runaway horses which a fence could not have halted had it been there. "The fence of the statute," held the court (p 616), "would have been but gossamer before those powerful horses, frantic with fright, upon whom 2 strong men could make no impression."

The jury's verdict in favor of the favored driver will not be disturbed by us, despite the erroneous instruction. Even a proper instruction could not have changed the verdict.

Plaintiff also argues that the instructions so emphasized the contributory negligence of plaintiff's driver (which, if it existed, was not imputable to plaintiff) that it misled the jury. Certain sentences, taken out of context, support appellant's claim. The charge as a whole on this point, however, fairly pre-

---

[*] We have not overlooked his testimony, which the jury was entitled to believe, that he did, in fact, look to the south, his right.

sented the issues. *Gilson* v. *Bronkhorst,* 353 Mich 148. Since this situation (of the plaintiff guest passenger) is fairly repetitive we deem it pertinent to observe that, as pointed out by Mr. Justice CARR in *White* v. *Huffmaster,* 321 Mich 225, 233, quoting an earlier case:

" 'The jury should be instructed that it should first determine whether defendant was guilty of negligence and whether such negligence was a proximate cause of the accident. If the jury should so find, then the negligence of plaintiff's driver has no bearing in the case.' "

Affirmed. Costs to appellees.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.