CHURUKIAN v. LAGEST.

1. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.

The Supreme Court views the facts from the point of view favorable to plaintiff which a jury might have taken of them on an appeal from judgment entered after verdict was directed for defendant on the ground of plaintiff's contributory negligence.

2. AUTOMOBILES—THROUGH HIGHWAYS—STOPPING—YIELDING RIGHT-OF-WAY.

A motorist approaching a through highway on a subordinate street has the duty to stop and yield the right-of-way to traffic lawfully approaching on the through highway, the purpose of the requirement of stopping being to require that he yield the right-of-way to such lawfully approaching traffic on the through highway (CLS 1956, §§ 257.614, 257.651).

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error § 945.
[2-4] 5A Am Jur, Automobiles and Highway Traffic § 321 et seq.
Liability for accident at highway intersection as affected by reliance upon or disregard of traffic sign, signal or marking. 164 ALR 8.
[5] 3 Am Jur, Appeal and Error § 246.
[6] 38 Am Jur, Negligence § 217 et seq.
Doctrine of last clear chance. 92 ALR 47, 119 ALR 1041.
[7] 38 Am Jur, Negligence § 293.

3. Same—Through Highways—Yielding Right-of-Way—Intersections.

The purpose of a through highway, to move a large volume of traffic at relatively high speeds, requires that drivers thereon be accorded more than the privilege of going through the intersection in advance of a car on a subordinate road which reaches the intersection at the same time (CLS 1956, § 257.651).

4. Same—Through Highways—Stopping—Yielding Right-of-Way —Contributory Negligence.

Plaintiff motorist who approached a through highway at 1:30 a.m. and stopped in obedience to a red flasher light but started up again still had the duty to yield the right-of-way to defendant's visibly approaching car on the through highway that was travelling at a legal speed and which did not change its course or take any unexpected action, hence, directed verdict for defendant on ground of contributory negligence of plaintiff was proper (CLS 1956, §§ 257.614, 257.651).

5. Appeal and Error—Questions Reviewable—Issue Not Presented to Trial Court.

An issue which was not presented to the trial court for determination may not be raised on appeal.

6. Negligence—Contributory Negligence—Last Clear Chance— Subsequent Negligence.

The doctrine of last clear chance or subsequent negligence would not apply where plaintiff's contributory negligence continued up to the very point of impact.

7. Same—Contributory Negligence—Presumptions—Evidence.

A plaintiff is not entitled to the benefit of a presumption of freedom from contributory negligence, where there is ample testimony from plaintiff to establish her own negligence. .

Appeal from Oakland; Hartrick (George B.), J. Submitted January 7, 1959. (Docket No. 21, Calendar No. 47,554.) Decided July 14, 1959.

Case by Mary Churukian against Clayton LaGest for injuries sustained in automobile collision. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Davidow & Davidow (Larry S. Davidow,* of counsel), for plaintiff.

*Patterson & Patterson and Barrett,* for defendant.

EDWARDS, J.   Plaintiff suffered severe injuries in an automobile accident which occurred Sunday, June 20, 1954, at approximately 1:30 a.m., at the intersection of Chicago boulevard and Telegraph road. She sued the owner of the other automobile involved in the collision, in Oakland county circuit court under the owner liability act (CLS 1956, § 257.401 [Stat Ann 1952 Rev § 9.2101]).   After the completion of plaintiff's proofs the judge directed a verdict for defendant on the grounds of plaintiff's contributory negligence.

On appeal to this Court in such a situation we have repeatedly emphasized that we view the facts from the point of view favorable to plaintiff which a jury might have taken of them.   *Gapske* v. *Hatch,* 347 Mich 648; *Hopkins* v. *Lake,* 348 Mich 382.

These then are the facts for purposes of this appeal:

Plaintiff was returning from a graduation party at a married sister's home.   With her in the car were her mother, her sister and a friend.   There had been no drinking.

Plaintiff's testimony concerning the crucial facts of the accident is as follows:

"*A.*   As I approached Telegraph, I slowed.   I could see the flasher from far away and I slowed down slowly.   I didn't come to an abrupt stop.   I came to a stop at Telegraph road.   There was a red blinker light there.   I came to a complete stop. After I stopped—Chicago is 2 lanes, like this, and then there is a cement part where you can turn, it widens out and I was in the second lane and I

stopped and looked to my right and then I looked to my left for approaching traffic and I saw nothing.

"*Q.* Did you see any traffic on your right when you looked?

"*A.* No, there were no cars that way.

"*Q.* When you looked to your left was there any traffic approaching from your left?

"*A.* No.

"*Q.* Then what did you do?

"*A.* I put my car in motion and again I thought I better look to the right again and I looked and saw some lights, it had been raining that day and it was misty outside and I could see some lights far away. I thought I had plenty of time to get through.

"Having looked to my right and to my left, I saw nothing at that time and of course I thought I should start up, I couldn't sit there all night and I started up. I couldn't tell you how far away those lights were. I could just see them. I couldn't see what they were, just some lights. And I thought I had plenty of time to get through. If I stopped there might be traffic coming from the left. I had made a complete stop and I had observed and upon not seeing anything, I thought I could cross. * * * I saw the lights but I didn't know what they were at the time or how close they were to me and that is the only thing I knew about it.

"*Q.* Have you any recollection of a collision?

"*A.* No, sir.

"*Q.* What is the last you remember that night?

"*A.* Putting the car in motion and observing the lights and then the lights in the hospital."

And on cross-examination:

"*Q.* Now, could you give me an estimate as to how fast your car was traveling at that time in miles per hour, whether 10 miles an hour or 5 or 15?

"*A.* Might I ask, previous to stopping or after?

"*Q.* Perhaps I didn't ask it correctly. At the time you made the observation you just described, how fast would you say you were going at that time?

"*A*. I had started up from a standstill, I wouldn't say more than 5 miles an hour.

"*Q*. Approximately 5 miles an hour?

"*A*. Yes, not any more.

"*Q*. Then you looked to the south at that time and I believe you said you saw some lights, is that correct?

"*A*. At that time I saw some lights, yes.

"*Q*. Were they south of this dip you referred to or had they come over this rise? Where were those lights?

"*A*. I have no idea how far away they were. They were at my right.

"*Q*. You didn't form any judgment as to the distance they were away?

"*A*. No, I didn't. They just seemed far away.

"*Q*. But you had formulated at that time no judgment how far away they were?

"*A*. It looked to me that they were far enough away so I could safely go across."

The dip in Telegraph road referred to above is identified by other testimony as 600 feet from Chicago boulevard.

The driver of the other automobile was called by plaintiff to testify under the statute.* He was 1 of 6 young servicemen returning home from Fort Knox, Kentucky, on a 42-hour leave. One of the young men was also the son of the owner of the car, the defendant here.

The driver testified that he had gotten up on Saturday at 5:30 a.m. but had had "at the most" 3 hours sleep, in the car. He also testified that there had been no drinking amongst the occupants of the car.

The defendant's car was proceeding north on Telegraph road—a main 4-lane highway. Approaching Chicago boulevard, while still 1/2 mile away the

---

* See CL 1948, § 617.66 (Stat Ann § 27.915).—REPORTER.

driver saw a yellow flasher confronting him, and a red flasher light confronting cross-traffic on Chicago. He was familiar with the intersection. He testified his speed was 30 to 35 miles per hour. The speed limit at that point on Telegraph was 45 miles per hour.

Concerning his observations immediately before the crash, the driver of defendant's car testified:

"*A.* I don't recall making a definite observation to the left but I recall as I approached the intersection I could see a car coming or stopped in the intersection."

He also testified that he was looking to his right immediately prior to the accident and only saw the plaintiff's car just before the impact. As to the accident itself, he testified:

"*Q.* Now, do you mean to say that the front of her car struck the side of your car the way you made the drawing?

"*A.* Yes, sir, the front left fender and door was all damaged and I was thrown through the window and struck my shoulder on the door like that, so the impact was at the front fender.

"*Q.* You say it was the side of your car that came in contact with the Ford?

"*A.* The very point of the left front fender.

"*Q.* Of the Ford?

"*A.* Of our car.

"*Q.* The left front fender of your car came in contact with the side of the Ford, is that right?

"*A.* No, sir, the front of the Ford."

On this same point, plaintiff testified that she did not know what portion of her car came in contact with defendant's.

The trial judge summarized the crucial testimony thus just prior to granting the motion for a directed verdict:

"*The Court:* I have the factual situation in mind. Taking the case in its most favorable light, here she is, stopped at a red flasher. Next she starts out. There is nothing in view. All of a sudden she sees lights. She did not form any judgment where they were and the best we can say is that when she saw lights she kept on going because she thought she had time to make it."

This Court has in recent years frequently reiterated that it must be a very clear case to justify a trial judge in taking a negligence action from the jury on grounds of contributory negligence. *Kaminski* v. *Grand Trunk Western R. Co.,* 347 Mich 417; *Ware* v. *Nelson,* 351 Mich 390.

See, also, *Detroit & Milwaukee R. Co.* v. *Van Steinburg,* 17 Mich 99.

This seems to us to be such a case.

Plaintiff was traveling on a subordinate street, approaching a main through highway. She had a plain duty to stop, signaled by a red flasher light. CLS 1956, §§ 257.614, 257.651 (Stat Ann 1952 Rev §§ 9.2314, 9.2351). She had the duty likewise to yield the right-of-way to traffic lawfully approaching on the through highway. The purpose of the statute in requiring the driver on the inferior road to stop is plainly to require him to yield the right-of-way to traffic lawfully approaching on the main highway. *Shoniker* v. *English,* 254 Mich 76; *Leader* v. *Straver,* 278 Mich 234; *Breker* v. *Rosema,* 301 Mich 685 (141 ALR 867); *Krause* v. *Ryan,* 344 Mich 428. On the facts in this case stated in the light most favorable to her, plaintiff obviously failed to perform this duty.

Plaintiff seems to present her case on the basis of an understanding that once she had stopped for the red flasher as required, she had discharged her statutory obligation, and that she then had equal rights at the crossing with cars on the main high-

way. This is not our concept of the intent and purpose of the statute. Her duty to yield the right-of-way continued, and it was her obligation to know that traffic on the main highway was clear before she undertook to cross. While this duty might not continue *ad infinitum* under extreme traffic conditions, no such extreme traffic conditions on Telegraph road at 1:30 a.m. on the morning in question are indicated in this record.

In *McGuire* v. *Rabaut,* 354 Mich 230, this Court said (pp 238, 239):

"The purpose of the through highway is to move great volumes of traffic at relatively high speeds. Such purpose cannot be accomplished if our application of the standard of due care does not take into account the unique function of the arterial highway. Thus it was that we said in *Arnold* v. *Krug,* 279 Mich 702, 707, that, 'The right-of-way accorded to a driver upon a trunk-line highway is something more than the privilege of going through the intersection in advance of a car which reaches it at the same time.' "

The defendant in this case was traveling on one of the busiest of Michigan's great arterial highways. He was the favored driver. The undisputed facts make it obvious that the plaintiff, in this case the subordinate driver, failed to yield the right-of-way. If we seek for excuse for her failure in this record, we find none. She could not depend on the defendant's driver stopping. He had no duty to do so. She had no problem as to visibility. See *Henry* v. *Sanderson,* 260 Mich 563. There was no change of course or unexpected action by defendant's driver which intervened. See *Vukich* v. *City of Detroit,* 325 Mich 644. There was no illegal speed on the part of the other automobile. See *Boyson* v. *Hurst,* 347 Mich 302.

At an intersection where she was required by law to yield the right-of-way, plaintiff drove across 2 traffic lanes and collided with defendant's car while it was traveling at a legal speed, where it had the right to be.

We fail to see how this driving could be regarded as other than negligence which contributed as a proximate cause to the happening of the accident. The circuit judge did not err in directing a verdict on this ground.

Plaintiff-appellant also asserts that she was entitled to have a jury consider her case under a gross-negligence or last-clear-chance doctrine. Defendant claims that there is nothing in plaintiff's declaration referring to the doctrine of last-clear-chance or subsequent negligence and that plaintiff cannot now raise this issue on appeal. *City of St. Clair Shores v. Conley,* 350 Mich 458. Even if plaintiff had properly raised this issue, for the doctrine to be applicable, plaintiff's negligence must have come to rest leaving her in a place of danger about which defendant's driver knew, or should have known. *Szost v. Dykman,* 252 Mich 151; *Morrison v. Hall,* 314 Mich 522. We do not view these facts as presenting such a case. Plaintiff's negligent conduct continued up to the very point of impact.

Nor do we believe that plaintiff was entitled on this factual record to any presumption of freedom from contributory negligence. There is ample testimony from plaintiff to establish her own negligence.

Affirmed. Costs to appellee.


DETHMERS, C. J., and CARR, KELLY, BLACK, VOELKER, and KAVANAGH, JJ., concurred with EDWARDS, J.


SMITH, J. (*concurring*). Here again we consider one of the most difficult of the contemporary tort

problems, the adjustment of the relative rights and duties between the automobile driver on an arterial highway, protected by stop signs or traffic lights, and the driver entering such highway from a subordinate road. The difficulty arises from the fact that if the arterial highway is to fulfill its function it must permit traffic to move in great volume and at relatively high rates of speed. Yet the arterial driver remains at all times under a duty to exercise (and the subordinate driver may lawfully demand that he exercise) due care. What is due care under such circumstances?

We gave the problem exhaustive consideration recently in *McGuire* v. *Rabaut,* 354 Mich 230. There is no need here to repeat what was there held by a unanimous court. It remains only to apply the principles enunciated.

Taking the view of the facts most favorable to plaintiff, as we are required to do in the posture of the case before us, the defendant's car was being driven in a northerly direction upon Telegraph road, an arterial highway, at a speed under the maximum rate allowed. The driver, as we know, was under a duty to exercise due care. He must make reasonable allowance for traffic conditions, for fog, snow, or other adverse weather conditions, and for curves and road conditions. But due care for such a driver does not demand that he slacken his speed or prepare to stop at successive street intersections in the anticipation that side-street drivers will contest his right-of-way. Not only would such action impede the flow of arterial traffic but it would be hazardous to both the driver and those following him. Due care, then, for the arterial driver includes his right to assume that he will be accorded the right-of-way. This assumption may be relied upon by him until he is aware, or as a reasonably prudent driver,

should be aware, that his right-of-way is being challenged.

The weather was clear on the night in question and the visibility good. As defendant's car approached the Chicago street intersection the driver noted, generally, the intersection conditions. The lights of other cars were visible, as well as traffic lights. There was a restaurant on the right, partially obstructing his view in that direction. On the west side of Telegraph, to his left, there was a drive-in theater. And, although a "definite" observation of traffic to the left was not made, the driver testified, "I recall, as I approached the intersection I could see a car coming or stopped in the intersection." We have, up to this point, no testimony from which a jury would be entitled to find warning of hazard, nothing in the situation to require of the arterial driver a slackening of his speed or a change of his course.

When did such duty arise? When must he (in the exercise of due care) take steps to avoid collision with a subordinate driver who ventures into his path? Only, as we have noted, when it becomes obvious, or should become obvious to the reasonably prudent arterial driver, that his right-of-way is, in truth, being contested. "It is at this time that his duty of care with respect to the subordinate driver arises, and his post-observation negligence, or lack thereof, is measured by his actions after this point." *McGuire* v. *Rabaut, supra,* 236. If he, at this point, does not act with reasonable care he may be forced to respond in damages, but reasonable care at this point is the care of one confronted with an emergency not of his creation, in the light of which his actions will be judged. The doctrine of proximate cause, also, must be examined. It may well be that there has been negligence on the part of the arterial

driver but that his permissible speed, and the traffic conditions, were then such that, even had he been alert, looked, discovered the danger, and responded instantaneously and properly, no action on his part could have averted collision once the subordinate driver came into his path. If this were the case his negligence in not properly observing or acting could not be a proximate cause of the accident. It is only after consideration of these factors that we reach the problem of contributory negligence on the part of the subordinate driver, a problem which (since *McKinney* v. *Yelavich,* 352 Mich 687, 697, 698) is considered not in terms of what a driver "could have seen, as a matter of physical fact, but what he should have seen in the exercise of due care. These are vastly different propositions." No decision was reached as to this phase of the case before us for reasons that will appear.

The trial court (the decision was made prior both to *McGuire* v. *Rabaut, supra,* and *McKinney* v. *Yelavich, supra*), confining the discussion upon defendant's motion for a directed verdict "to the issue of contributory negligence on the part of the plaintiff," granted such motion. Strictly speaking, however, there can be no contributory negligence on the part of the plaintiff without negligence for which the defendant is responsible. Upon the facts before us there is the most serious question as to any negligence whatever on the part of the defendant. Nevertheless, we will not disturb the result thus reached, since even if plaintiff's actions were not the sole proximate cause of her injuries they contributed thereto. We recognize that the determination of the negligence of a driver crossing an arterial intersection is normally a question for the jury. It involves not only the fact that a car is "there to be seen" on the arterial highway but a weighing of

many factors such as visibility, the condition of the surface of the road, the speed of the oncoming automobile, the width of the intersection, and other factors, the ultimate question being a matter of human judgment, namely, whether the arterial car constitutes an immediate hazard to a safe crossing. Upon the facts before us, however, the conduct of the plaintiff was such that reasonable men could not differ that the judgment made was palpably inconsistent with the exercise of due care. The question was, therefore, properly taken from the jury and resolved by the court.

Affirmed. Costs to appellee.

BLACK and VOELKER, JJ., concurred with SMITH, J.