*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LATRICIA HOWARD,

      Plaintiff-Appellant,

v

LACEY RENEE WISTINGHAUSEN and LISA
RENEE WISTINGHAUSEN,

      Defendants-Appellees.

UNPUBLISHED
January 23, 2020

No. 345788
Wayne Circuit Court
LC No. 17-006810-NI

Before: K. F. KELLY, P.J., and BORRELLO and SERVITTO, JJ.

PER CURIAM.

In this third-party automobile negligence action, plaintiff appeals as of right an order granting summary disposition in favor of defendants.[1] Plaintiff argues on appeal that the trial court erred in determining that there was no genuine issue of material fact regarding whether plaintiff was more than 50% at fault in causing the accident and that the action was therefore barred under § 3135(2)(b) of the no-fault act, MCL 500.3101 *et seq.* For the reasons set forth in this opinion, we reverse.

## I. BACKGROUND

This case arises out of a motor vehicle accident that occurred on June 20, 2015. According to her deposition, plaintiff stopped her vehicle at an intersection where she had a blinking red light. After looking both ways and seeing no other vehicles, she proceeded to make a left turn when another vehicle collided with the driver side of plaintiff's vehicle as plaintiff was turning. Plaintiff testified that the blinking red light never changed before she began her turn. Defendant, who was 18 years old at the time, was driving the other vehicle; she was arrested at

---

[1] The complaint names Lacey Wistinghausen and Lisa Wistinghausen as defendants because Lisa owned the vehicle that Lacey was driving at the time of the accident. Where this opinion references defendant singularly, it is referring to Lacey, the driver of the vehicle.

the scene for being a minor driving while intoxicated by alcohol.[2] Plaintiff received a citation for failure to yield. Robert Zezula, who was a passenger that day in the vehicle driven by defendant, testified in his deposition that the collision occurred as defendant entered the intersection and that plaintiff's vehicle hit defendant's vehicle on the passenger side of defendant's vehicle between the right blinker and the door. According to Zezula, the light was green for defendant's direction of travel. Plaintiff's failure-to-yield charge was eventually dismissed.

Plaintiff initiated this lawsuit, alleging that defendant negligently caused the accident.[3] Defendants subsequently moved for summary disposition under MCR 2.116(C)(10), arguing that there was no genuine issue of material fact that plaintiff was, at a minimum, more than 50% at fault in causing the accident because defendant had the right of way and plaintiff failed to yield the right of way as required by the blinking red light. Defendants further argued that because plaintiff was more than 50% at fault, plaintiff's claim was barred by MCL 500.3135(2)(b). Plaintiff opposed the motion and argued that defendant was a minor driving under the influence of alcohol, which caused the collision.

The trial court granted defendants' motion for summary disposition, determining that there was no genuine issue of material fact regarding whether plaintiff was more than 50% at fault for the accident and that plaintiff's claim was therefore barred by MCL 500.3135(2)(b). The trial court reasoned that it was undisputed that plaintiff had a blinking red light for her direction of travel, that defendant had a green light and the right of way, and that plaintiff was hit by defendant's vehicle when plaintiff entered the intersection. The trial court stated there was no evidence presented by plaintiff creating a genuine issue of material fact regarding plaintiff's failure to yield to defendant's right of way and that there was no evidence that defendant was "contributorily negligent for this accident."

## II. STANDARD OF REVIEW

We review a trial court's summary disposition ruling de novo. *Bennett v Russell*, 322 Mich App 638, 642; 913 NW2d 364 (2018). "A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (emphasis omitted). "A motion brought under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (citation and quotation marks omitted). When a motion is brought under MCR 2.116(C)(10), a

---

[2] There is no contradictory evidence with respect to defendant's arrest for being a minor driving while intoxicated. However, the police report submitted by plaintiff is inconsistent with the police report submitted by defendants with respect to defendant's preliminary breath test result. While both indicated that alcohol was present, the police report submitted by plaintiff indicates that defendant's test result was 0.137 while the report submitted by defendant indicates that defendant's test result was 0.

[3] With respect to Lisa, plaintiff alleged that she had negligently entrusted the vehicle to Lacey.

court "considers the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . ." *Bennett*, 322 Mich App at 642 (citation and quotation marks omitted; ellipsis in original). The court must view the evidence "in the light most favorable to the party opposing the motion," *Veenstra v Washtenaw Country Club*, 466 Mich 155, 164; 645 NW2d 643 (2002), "draw[] all reasonable inferences in favor of the nonmoving party," *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 Mich App 211 (2010), and refrain from assessing credibility or weighing the evidence, *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013).

## III. ANALYSIS

On appeal, plaintiff argues that there was a genuine issue of material fact regarding whether defendant was negligent in causing the motor vehicle accident, and how fault should be apportioned between plaintiff and defendant, because defendant was under the influence of alcohol while being under the legal drinking age at the time of the accident. Plaintiff contends that the trial court ignored defendant's unlawful behavior related to the accident and that, consequently, the trial court erred by determining that plaintiff was more than 50% at fault and granting summary disposition in defendants' favor on that basis.

Establishing a prima facie case of negligence requires showing "(1) a duty, (2) a breach, (3) injury or damages, and (4) causation." *Campbell v Kovich*, 273 Mich App 227, 230; 731 NW2d 112 (2006). "Proximate cause is an essential element of a negligence claim." *Ray v Swager*, 501 Mich 52, 63; 903 NW2d 366 (2017). " 'Proximate cause' is a legal term of art that incorporates both cause in fact and legal (or 'proximate') cause." *Campbell*, 273 Mich App at 232 (citation and some quotation marks omitted). Cause in fact "requires a showing that, but for the negligent conduct, the injury would not have occurred." *Id*. Proximate cause requires considering the foreseeability of consequences of the conduct at issue and whether a party "should be held legally responsible for such consequences, i.e., it is socially and economically desirable to hold the [party] liable." *Lamp v Reynolds*, 249 Mich App 591, 599-600; 645 NW2d 311 (2002); see also *Campbell*, 273 Mich App at 232. "[T]here may be more than one proximate cause of an injury." *Brisboy v Fibreboard Corp*, 429 Mich 540, 547; 418 NW2d 650 (1988). "When a number of factors contribute to produce an injury, one actor's negligence will not be considered a proximate cause of the harm unless it was a substantial factor in producing the injury." *Id*.

The no-fault act, however, places certain limits on tort liability. *McCormick v Carrier*, 487 Mich 180, 189; 795 NW2d 517 (2010). Relevant to the claims made by plaintiff in this case, "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). In a cause of action for damages under that subsection, "[d]amages must be assessed on the basis of

comparative fault, except that damages must not be assessed in favor of a party who is more than 50% at fault." MCL 500.3135(2)(b).[4]

Comparative negligence is generally considered an affirmative defense that "encompasses aspects of both liability and damages." *Kalamazoo Oil Co v Boerman*, 242 Mich App 75, 79-81; 618 NW2d 66 (2000). "The standards for determining the comparative negligence of a plaintiff are indistinguishable from the standards for determining the negligence of a defendant, and the question of a plaintiff's own negligence for failure to use due care for his own safety is a jury question unless all reasonable minds could not differ or because of some ascertainable public policy consideration." *Rodriguez v Solar of Michigan, Inc*, 191 Mich App 483, 488; 478 NW2d 914 (1991). When assessing the comparative negligence of the parties, "[s]o long as there is a finding of proximate cause in each case, the negligence of the parties must be compared." *Brisboy*, 429 Mich at 552.

That the determination of comparative fault involves factual questions to be resolved by the trier of fact is evident from MCL 600.6304, which provides in pertinent part as follows:

> (1) In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death involving fault of more than 1 person, including third-party defendants and nonparties, the court, unless otherwise agreed by all parties to the action, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings indicating both of the following:
>
> (a) The total amount of each plaintiff's damages.
>
> (b) *The percentage of the total fault of all persons that contributed to the death or injury*, including each plaintiff and each person released from liability under section 2925d, regardless of whether the person was or could have been named as a party to the action.
>
> (2) In determining the percentages of fault under subsection (1)(b), the trier of fact shall consider both the nature of the conduct of each person at fault and the extent of the causal relation between the conduct and the damages claimed.
>
> * * *
>
> (8) As used in this section, "fault" includes an act, an omission, conduct, including intentional conduct, a breach of warranty, or a breach of a legal duty, or

---

[4] This statute has recently been amended and we quote the most current language because the changes to the statutory language on which we rely are stylistic and not substantive. See 2019 PA 21; 2019 PA 22.

-4-

any conduct that could give rise to the imposition of strict liability, that is a proximate cause of damage sustained by a party. [Emphasis added.]

Similarly, our case law provides that the determination of comparative fault is usually a question of fact left to the trier of fact. "Violation of a statute by a plaintiff or a defendant creates a prima facie case from which a jury may draw an inference of negligence." *Rodriguez*, 191 Mich App at 487-488. Like the issue of comparative negligence, "proximate cause is an issue for the jury, provided that there is evidence from which reasonable persons could draw a fair inference that the injury was caused by negligence." *Id*. at 488. Additionally, it generally "is for the jury to determine whether a violation of a statute was a proximate cause of the accident." *Id*.

In this case, the record evidence reveals plaintiff recalled that she stopped at a blinking red light, looked both ways, saw no other vehicles, entered the intersection to turn left, and collided with defendant's vehicle during the course of her left turn. Zezula recalled that defendant's vehicle entered the intersection pursuant to a green light. Viewing this evidence in a light most favorable to plaintiff as the nonmoving party and accepting as true her testimony that she entered the intersection after stopping for a flashing red light, her actions were governed by MCL 257.614(1)(a), which provides as follows:

> (1) If flashing red or yellow signals are used, they shall require obedience by vehicular traffic as follows:
>
> (a) Flashing red (stop signal). When a red lens is illuminated by rapid intermittent flashes, drivers of vehicles shall stop before entering the nearest crosswalk at an intersection or at a limit line when marked and the right to proceed shall be subject to the rules applicable after making a stop at a stop sign.

In turn, MCL 257.649(8)[5] provides as follows regarding stopping at a stop sign:

> (8) Except when directed to proceed by a police officer, the driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the crosswalk on the near side of the intersection, or if there is not a crosswalk shall stop at a clearly marked stop line; or if there is not a crosswalk or a clearly marked stop line, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway. After having stopped, the driver shall yield the right of way to a vehicle that has entered the intersection from another highway or that is approaching so closely on the highway as to constitute an immediate hazard during the time when the driver would be moving across or within the intersection.

---

[5] At the time when the accident occurred, this provision was contained in Subsection (6); the recent amendment to the statute otherwise involved only minor stylistic changes to the language of what is now Subsection (8). See 2018 PA 109.

-5-

Accordingly, there is no genuine issue of material fact that plaintiff violated MCL 257.614(1)(a) and MCL 257.649(8) by, at a minimum, failing to yield the right of way as required by the flashing red light confronting plaintiff to defendant's vehicle that was "approaching so closely on the highway as to constitute an immediate hazard during the time when [plaintiff] would be moving across or within the intersection." Although plaintiff testified that she did not see any vehicles when she stopped at the intersection and looked both ways, the collision that occurred once plaintiff entered the intersection demonstrates that defendant's vehicle was present and close enough to the intersection that plaintiff did not have sufficient time to proceed through the intersection and complete her turn before defendant's vehicle entered the intersection. There is no evidence in the record to explain why plaintiff did not see defendant's vehicle. Based on plaintiff's statutory violation, a jury could reasonably infer that plaintiff was negligent. *Rodriguez*, 191 Mich App at 487-488. A jury could also reasonably conclude that but for plaintiff's improper entry into the intersection, the accident would not have occurred and that plaintiff's negligent action was therefore a cause in fact of her injury. *Campbell*, 273 Mich App at 232. Further, a jury could reasonably conclude that plaintiff's statutory violation was a proximate cause of her injury because such an accident was a foreseeable result of failing to yield the right of way as required by statute and an individual should be held legally responsible for the consequences of such conduct. *Id*.; *Lamp*, 249 Mich App at 599-600; *Rodriguez*, 191 Mich App at 488. Therefore, the trial court was correct to consider plaintiff's conduct in determining the comparative fault of the parties. *Brisboy*, 429 Mich at 552.

However, the question becomes to what degree defendant's conduct should enter into the equation. The trial court essentially concluded—as a matter of law—that the nature of plaintiff's conduct made plaintiff more that 50% responsible for her injuries. Such a finding implied that defendant could not be greater than 50% at fault for the accident. Our examination of the record evidence provided leads us to conclude that a question of fact exists as to whether plaintiff or defendant are barred under § 3135(2)(b) of the no-fault act.

There exists record evidence that defendant was arrested for being a person under the age of 21 who was driving while intoxicated. MCL 257.625(6)[6] provides that "[a] person who is less than 21 years of age, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if the person has *any* bodily alcohol content." (emphasis added). Thus, a reasonable jury could infer that defendant also committed a statutory violation related to her driving and was thereby negligent. *Rodriguez*, 191 Mich App at 487-488.

On appeal, defendant ignores this fact and maintains instead that plaintiff's failure to yield the right of way is dispositive in showing as a matter of law that plaintiff was more than

---

[6] The recent amendment to MCL 257.625(6)(a), which concerns the date on which certain other changes will take effect regarding how "any bodily alcohol content" is defined for purposes of MCL 257.625(6), is not implicated by the facts of this case and has no bearing on our analysis. See 2017 PA 153.

-6-

50% at fault. Defendant relies on *Churukian v La Gest*, 357 Mich 173, 175-178, 179-181; 97 NW2d 832 (1959), in which our Supreme Court affirmed a trial court's ruling granting a directed verdict in favor of the defendant driver due to the plaintiff driver's contributory negligence where, much like the situation in the instant case, the plaintiff driver entered the intersection after stopping at a flashing red light and collided with the defendant's vehicle. The plaintiff in *Churukian* testified that she saw headlights in the distance on the cross street onto which she was turning but thought that she had enough time to complete her turn. *Id*. at 176. However, unlike the factual circumstances presented in the instant case, neither driver in *Churukian* had been consuming alcohol. *Id*. at 175, 177. The *Churukian* Court reasoned as follows:

> Plaintiff was traveling on a subordinate street, approaching a main through highway. She had a plain duty to stop, signaled by a red flasher light. She had the duty likewise to yield the right of way to traffic lawfully approaching on the through highway. The purpose of the statute in requiring the driver on the inferior road to stop is plainly to require him to yield the right of way to traffic lawfully approaching on the main highway. On the facts in this case stated in the light most favorable to her, plaintiff obviously failed to perform this duty.

> Plaintiff seems to present her case on the basis of an understanding that once she had stopped for the red flasher as required, she had discharged her statutory obligation, and that she then had equal rights at the crossing with cars on the main highway. This is not our concept of the intent and purpose of the statute. Her duty to yield the right of way continued, and it was her obligation to know that traffic on the main highway was clear before she undertook to cross. While this duty might not continue *ad infinitum* under extreme traffic conditions, no such extreme traffic conditions on Telegraph road at 1:30 a. m. on the morning in question are indicated in this record.

> * * *

> The purpose of the through highway is to move great volumes of traffic at relatively high speeds. Such purpose cannot be accomplished if our application of the standard of due care does not take into account the unique function of the arterial highway. . . . "The right of way accorded to a driver upon a trunk-line highway is something more than the privilege of going through the intersection in advance of a car which reaches it at the same time."

> The defendant in this case was traveling on one of the busiest of Michigan's great arterial highways. He was the favored driver. The undisputed facts make it obvious that the plaintiff, in this case the subordinate driver, failed to yield the right of way. If we seek for excuse for her failure in this record, we find none. She could not depend on the defendant's driver stopping. He had no duty to do so. She had no problem as to visibility. There was no change of course or unexpected action by defendant's driver which intervened. There was no illegal speed on the part of the other automobile.

At an intersection where she was required by law to yield the right of way, plaintiff drove across two traffic lanes and collided with defendant's car while it was traveling at a legal speed, where it had the right to be.

We fail to see how this driving could be regarded as other than negligence which contributed as a proximate cause to the happening of the accident. The circuit judge did not err in directing a verdict on this ground. [*Churukian*, 357 Mich at 179-181 (citations omitted).]

We conclude that *Churukian* is significantly distinguishable and does not govern the outcome in this case. First, unlike the factual circumstances presented here where both drivers were engaged in unlawful driving at the time of the accident, there is no indication that the defendant in *Churukian* was violating any relevant statute. Second, *Churukian* was decided under principles of contributory negligence rather than comparative negligence. Under a contributory negligence system, any negligence by the plaintiff in causing the injury is deemed sufficient to bar recovery, while comparative negligence in its pure form generally operates to reduce any recovery of damages by a plaintiff "to the extent of his or her own negligent contribution to the injury." *Placek v City of Sterling Hts*, 405 Mich 638, 650 n 1, 660-661; 275 NW2d 511, 514 (1979) (comparing contributory negligence with pure comparative negligence).[7]

Under the factual circumstances of this case, we find appropriate a more nuanced discussion of the parties' respective duties, such as the one provided by our Supreme Court in *McGuire v Rabaut*, 354 Mich 230, 234-236; 92 NW2d 299 (1958):

The difficulties in this case, as in other arterial highway versus subordinate street cases, arise from an apparent conflict between 2 equally sound and equally applicable principles of law. The first is that a driver on an arterial highway is entitled to assume that subordinate drivers will yield him the right of way. He is not bound to anticipate unlawful or negligent acts on their part. At the same time, however, the favored driver must conform to the standard of due care imposed upon him as well as the rest of mankind, namely, that he shall exercise reasonable care for his own protection. But what does this actually mean in terms of arterial travel? Therein lies our problem. . . .

It is clear, at the one extreme, that the favored driver is not permitted to lower his head, close his eyes, and charge blindly through intersections on the theory that such is his 'right' simply because he is the favored driver. . . . The favored driver's rights are not so broad. It remains his duty to exercise reasonable care under the circumstances. . . .

---

[7] MCL 500.3135(2)(b), the statute at issue in this case, implements a hybrid form of comparative negligence where comparative negligence applies as long as the plaintiff is not more than 50% at fault. See *Placek*, 405 Mich at 660-661 (comparing the "pure" and "hybrid" forms of comparative negligence).

*　*　*

The favored driver is thus not required to have his car under such control as to be able to avoid collision with a subordinate driver coming illegally into his path. At what point, then, does the second principle (that of exercising reasonable care for his own protection) come into operation, requiring him to take steps to avoid collision with a subordinate driver? Only at that point when his continuing observations (which he must make, despite the fact that he is on an arterial highway) reveal, or should reveal to the reasonably prudent man, an impending danger. It is at this time that his duty of care with respect to the subordinate driver arises, and his post-observation negligence, or lack thereof, is measured by his actions after this point. Consequently, in the case before us the favored driver was entitled to assume, as he approached the Hastings intersection, that his right of way would not be contested by a subordinate driver. He was entitled to rely upon this assumption until it became clear to him (or, until, as a reasonable man, considering pertinent surrounding circumstances of traffic and terrain, it should have been clear to him) that a subordinate driver was going to challenge or obstruct his right of way. At this point his duty to attempt to avoid the impending collision began. It is from this point onward, and not before, with respect to a crossing subordinate driver appearing in his path, that we scrutinize his acts to determine whether or not he is guilty of negligence for failure to act as a reasonably prudent person, and, in all fairness to him, we must measure his conduct in the light of the emergency then presented, if not of his making.

The Court in *McGuire* held that a jury instruction that the defendant driver with the right of way approaching the intersection was not required to look to the right (from which direction the plaintiff entered the intersection) was erroneous but did not require reversal. *Id*. at 237, 240. The Court summarized the evidence regarding the defendant's speed, the defendant's required stopping distance, and the width of the intersection. *Id*. at 239. The Court, in reaching its conclusion affirming the jury's verdict, reasoned:

Upon the facts before us, then, we have a situation in which a driver proceeding at a lawful speed and in a lawful manner on an arterial highway is contested in his right to way by a subordinate driver under such circumstances that collision is inevitable. Before the favored driver can even react to the situation and put his foot on the brakes he is across the center line of the subordinate street and into the contested area. Under these circumstances an instruction that the favored driver need not look to his right ('because he has good reason to believe that he is protected from danger in that direction by the stop sign') while erroneous, will not necessitate reversal. The favored driver's negligence in not looking was not, as a matter of law, a proximate cause of the collision. Even had he looked, diligently, there was nothing he could have done, after discovery of the danger, upon these

facts, to avoid collision. The deficiency in plaintiff's case lies in the area of proximate cause. [*Id.* at 239-240.][8]

In this case, we emphasize that although there is undisputed evidence that traffic in the direction in which defendant was traveling had the right of way, there is also undisputed evidence that defendant was not lawfully driving on the road but was instead driving while intoxicated while also being under the age of 21, in violation of MCL 257.625(6).[9] This fact sufficiently distinguishes the factual circumstances of this case from those of *McGuire* and *Churukian* with respect to the starting point of our analysis. In this case, we are presented with a situation where neither driver was driving lawfully as they entered the intersection. We have already discussed plaintiff's role with respect to causation. As to defendant, she had a duty to make continuing observations of the surrounding traffic conditions, despite her right of way, and to attempt to avoid an impending collision once a reasonably prudent person would have realized that a subordinate driver was challenging defendant's right of way. *McGuire*, 354 Mich at 236. The trial court erred when it failed to engage in such an analysis, concluding instead that as a matter of law that defendant was not negligent in any way that contributed to the accident.

In order to avoid making a similar error, we must next consider whether a genuine issue of material fact exists regarding any negligence on defendant's part that could be found to be the proximate cause of plaintiff's injury. Essentially, we must compare the negligence of the parties to assess comparative fault. *Id.*; *Brisboy*, 429 Mich at 552.

As we have discussed, defendant's statutory violation permits the inference that she was generally negligent in the sense that she breached a legal duty, and this inference remains permissible when looking solely at defendant's conduct from the point at which a reasonable person would have realized that her right of way was being challenged. Reviewing defendant's duties as the right-of-way driver, as outlined by the *McGuire* Court, we conclude that a jury could find that defendant's conduct was both a cause in fact and a proximate cause of the injury. With respect to cause in fact, we first note that there exists a genuine issue of material fact regarding who hit whom, and thus which vehicle may have entered the intersection first, because there was conflicting evidence about the location of the impact: plaintiff testified that she was hit on the driver side of her car and Zezula testified that plaintiff's vehicle hit defendant's vehicle on the passenger side of defendant's vehicle between the right blinker and the door. Furthermore, a jury could reasonably infer from the evidence of defendant's unlawful state of intoxication while driving and being under the age of 21 that defendant should have observed plaintiff entering the

---

[8] The *McGuire* Court noted that the defendant had nonetheless testified that he did look to the right. *McGuire*, 354 Mich at 240 n 6.

[9] We again note that when a person "who is less than 21 years of age" operates a vehicle on the road, the presence of any amount of alcohol may be sufficient to constitute a violation of the statute. See MCL 257.625(6)(b) (defining "any bodily alcohol content" for purposes of Subsection (6) to mean "Any presence of alcohol within a person's body resulting from the consumption of alcoholic liquor, other than consumption of alcoholic liquor as a part of a generally recognized religious service or ceremony").

-10-

intersection and could have effectively reacted to avoid the accident but for plaintiff's intoxicated state. *McGuire*, 354 Mich at 236; *Campbell*, 273 Mich App at 232. Considering the factual dispute over how the collision occurred, we cannot say as a matter of law that there was nothing a driver in defendant's position, whether intoxicated or not, could have done to avoid the collision. Additionally, the inability to effectively drive safely on the roads with other drivers, which includes both the risk of creating accidents and having a diminished ability to avoid those hazards that are otherwise avoidable, is precisely the type of consequence that is a foreseeable result of driving while intoxicated and for which a party should be held legally responsible. *Lamp*, 249 Mich App at 599-600.

Accordingly, viewing the evidence in a light most favorable to plaintiff as the nonmoving party, and drawing all reasonable inferences in plaintiff's favor, we conclude that a jury could find from the record evidence that defendant's unlawful conduct was a proximate cause of plaintiff's injury, such that the parties' respective degrees of comparative fault must be compared. *Brisboy*, 429 Mich at 552. On this record, we cannot conclude as a matter of law that one party's negligence exceeded the other. The evidence of both parties' relevant statutory violations, and the legitimate inferences that arise, establish a prima facie case of comparative negligence when viewing the evidence in the light most favorable to the nonmoving party. *Rodriguez*, 191 Mich App at 487-490.

Our conclusion is further supported by the analysis set forth in *Biegas v Quickway Carriers, Inc*, 573 F3d 365, 374-376 (CA 6, 2009),[10] a case specifically applying MCL 500.3135(2)(b). The *Biegas* Court concluded in relevant part as follows:

> Taking the facts in the light most favorable to the Estate, we cannot say that Biegas's negligence exceeded Dailey's as a matter of law. It is clear that Biegas parked quite close to the fog line and that he should not have stepped onto the roadway without first checking for oncoming traffic. However, if Dailey had been following the preceding truck at a safe distance, he should have had sufficient time to see Biegas and move safely to the left of his own lane to avoid any contact with Biegas and his vehicle. Instead, Dailey allowed his tractor-trailer to drift at least three inches over the right fog line, sideswiping Biegas's parked vehicle and crushing Biegas's body between the two vehicles. Given that both parties bear responsibility for some substantial portion of the fault, we do not believe that this is the kind of "exceptional negligence case" in which summary judgment is appropriate. Rather, this case turns on applying a reasonable-person standard to the conduct of both Biegas and Dailey—a determination that is generally left to the jury. We therefore believe that there is a genuine issue of material fact as to whether the negligence of Biegas in parking close to the fog line and stepping into the traffic lane exceeded the negligence of Dailey in following the preceding truck too closely and allowing his tractor-trailer to cross the fog line. Accordingly, we hold that the district court erred in granting

---

[10] "Decisions from lower federal courts are not binding but may be considered persuasive." *Truel v City of Dearborn*, 291 Mich App 125, 136 n 3; 804 NW2d 744 (2010).

Quickway's motion for partial summary judgment. [*Id*. at 376 (citations omitted).]

We therefore conclude that the trial court erred by determining as a matter of law that plaintiff was more than 50% negligent and dismissing her action.

Reversed and remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction. Plaintiff having prevailed may tax costs. MCR 7.219(A).

/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello
/s/ Deborah A. Servitto