# STATE OF MICHIGAN

# COURT OF APPEALS

DANIEL O'KEEFE and KATHERINE O'KEEFE,

      Plaintiffs-Appellants,

v

AUDREY LANDGRAFF and RICHARD
LANDGRAFF,

      Defendants-Appellees.

UNPUBLISHED
August 23, 2016

No. 327455
Oakland Circuit Court
LC No. 2014-138266-NI

Before: K. F. KELLY, P.J., and M. J. KELLY and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this suit to recover damages for injuries sustained in an accident involving a motor vehicle and motorcycle, plaintiffs, Daniel O'Keefe and Katherine O'Keefe, appeal by right the trial court's order dismissing their claims against defendants, Audrey Landgraff and Richard Landgraff, under MCR 2.116(C)(10).[1] On appeal, the sole question is whether the trial court erred when it dismissed the O'Keefes' claims on the ground that no reasonable jury could conclude that Landgraff was 50% or more at fault for the accident. For the reasons more fully explained below, we conclude that the trial court did not err when it dismissed the O'Keefes' claims on that basis.

## I. BASIC FACTS

In August 2013, O'Keefe went for a ride on his motorcycle at around six in the evening. He testified that he rode west on Manor Road going toward Woodward Avenue, which is in Bloomfield Township, Michigan. An officer wrote in a police report that Manor Road was hard-packed gravel at this point. O'Keefe testified that it was a clear and sunny day.

---

[1] Because Katherine O'Keefe was not involved in the accident, we shall use O'Keefe to refer to Daniel O'Keefe. We shall refer to Daniel and Katherine collectively as the O'Keefes. Similarly, because Richard Landgraff is merely the owner of the vehicle driven by Audrey Landgraff, we shall use Landgraff to refer to Audrey Landgraff. We shall refer to Audrey and Richard Landgraff collectively as the Landgraffs.

-1-

O'Keefe stated that he rode his motorcycle from his home to Manor Road. He would "loop around" in the circular driveway of a home that had been demolished and head back to his house. As he approached the driveway where he intended to turn around, he noticed that there were two utility trucks parked on the north side of the road across from the vacant lot; the utility trucks blocked the westbound lane and so he rode into the lane for eastbound traffic in order to go around them. After he turned around in the circular driveway, he rode up to the corner of the turnaround and Manor Road and made a full stop. O'Keefe testified that he looked left and right and then left again before engaging his clutch and moving back onto Manor Road. He said he only just entered the eastbound lane—he was "[j]ust poking out"—when he was hit by a vehicle headed westbound on Manor Road.

Landgraff testified that she was 19 years of age at the time of her deposition. On the day at issue she was driving westbound on Manor Road. She "was driving around the utility trucks and suddenly a man was on [her] windshield." She was located just past the last utility truck when the accident occurred. She stated that she did not see the man before the accident. In a narrative report attached to the end of the police report, Landgraff wrote that she "thinks" that she was "probably" driving at about 30 to 35 miles per hour just before the accident. However, the officer who reconstructed the accident determined Landgraff's speed to have been between 15 and 16 miles per hour on the basis of the evidence that she stopped within about 57 feet of the point of impact.

O'Keefe testified that he saw Landgraff's Ford Explorer only for a second before she hit him; she was only one car length away when he pulled out. He denied that he saw Landgraff coming down Manor Road: "No, because she was not in the other—she was behind those trucks, then she swung out into my lane at a high speed." Although he did not actually see Landgraff pull out from behind the trucks, he suggested that she must have been hidden behind them: "So one moment she was not there, she was hidden by the trucks, the next moment she's hitting me." He further acknowledged that there was a dense stand of bushes at the end of the driveway that would block someone's view of westbound traffic to the right of the driveway, but he stated that he pulled up far enough that he had a "full view" of Manor Road. O'Keefe suffered serious injuries in the accident.

An officer wrote in the police report that O'Keefe was issued citations for failing to yield causing an accident, for having no motorcycle endorsement, for having no helmet, and for driving an unregistered motorcycle.

In January 2014, the O'Keefes sued the Landgraffs for damages arising from the accident. They alleged that Landgraff breached her duty to operate her vehicle safely and as a result struck O'Keefe. The O'Keefes further alleged that Audrey Landgraff was liable for the injuries she caused by her negligent operation of her vehicle, which included Katherine O'Keefe's loss of consortium, and that Richard Landgraff was similarly responsible under the owner's liability statute. See MCL 257.401.

In November 2014, the Landgraffs moved for summary disposition under MCR 2.116(C)(10). The Landgraffs argued that, even when the evidence is viewed in the light most favorable to the O'Keefes, a reasonable jury could not find that Landgraff was 50% or more the cause of the accident. For that reason, the Landgraffs maintained, the O'Keefes' claims were

barred under MCL 500.3135(2)(b). The Landgraffs also stated that the O'Keefes' claims were barred under the wrongful conduct rule.

The O'Keefes responded by citing the evidence that Landgraff was driving too fast while passing the DTE trucks. They relied on the expert opinion of Daniel J. Shepardson, who they hired to reconstruct the accident. He opined that Landgraff should have slowed to 10 miles per hour when passing the trucks and that, had she done so, she would have been able to stop once O'Keefe pulled in front of her on Manor Road. They further argued that O'Keefe had the right of way at the time of the accident because Landgraff had to yield to oncoming traffic before passing around the DTE trucks.

The trial court held a hearing on the motion in January 2015. At the hearing, the trial court recognized that the undisputed evidence showed that Landgraff had the right of way because O'Keefe was not travelling in the eastbound lane when Landgraff entered the eastbound lane to pass the utility trucks. Accordingly, it determined that summary disposition was proper because no reasonable jury could find that O'Keefe was less than 51% at fault for the accident. The trial court entered an order dismissing the O'Keefes' claims for the reasons stated on the record later that same month.

After the trial court denied their motion for reconsideration, the O'Keefes appealed in this Court.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

The O'Keefes argue on appeal that the trial court erred when it granted the Landgraffs' motion for summary disposition. Specifically, they maintain that the trial court erred when it determined that no reasonable jury could find that O'Keefe was less than 51% at fault for the accident. This Court reviews de novo whether the trial court properly granted a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Eng, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). This Court also reviews de novo whether the trial court properly selected, interpreted, and applied the relevant statutes. *Kincaid v Cardwell*, 300 Mich App 513, 522; 834 NW2d 122 (2013).

### B. ANALYSIS

#### 1. SPECIFICITY

Although this Court's review is de novo, this Court must review the motion for summary disposition in the same way that the trial court was obligated to review it. *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012). Accordingly, this Court must first determine whether the moving party properly asserted a ground for relief by specifically identifying "the issues as to which the moving party believes there is no genuine issue as to any material fact." MCR 2.116(G)(4). The level of specificity is that which would place the nonmoving party on notice of the need to respond. *Barnard Mfg*, 285 Mich App at 369, citing *Quinto v Cross & Peters Co*, 451 Mich 358, 370; 547 NW2d 314 (1996). If the moving party fails to identify its ground for relief with the requisite specificity, the nonmoving

party cannot be faulted for failing to respond, and the trial court should deny the motion. *Lowrey v LMPS & LMPJ, Inc*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket No. 323049); slip op at 3.

In their motion for summary disposition, the Landgraffs asserted that they were entitled to summary disposition of the O'Keefes' claims on two grounds: that no reasonable jury could find that Landgraff was 50% or more at fault and that O'Keefe was illegally operating his motorcycle and, therefore, was barred from recovery under the wrongful conduct rule. The Landgraffs supported their contention that no reasonable jury could find that Landgraff was 50% or more at fault with ample discussion of the law and evidence. As such, the Landgraffs moved with the requisite specificity to place the O'Keefes on notice of the need to respond to this ground for summary disposition. *Barnard Mfg*, 285 Mich App at 369. However, the Landgraffs did not include any discussion of the wrongful conduct rule and whether it applied under the facts of this case. By failing to discuss this issue in their motion or their brief in support of their motion, the Landgraffs failed to allege this ground with the requisite specificity and the O'Keefes had no obligation to respond. *Lowrey*, ___ Mich App at ___; slip op at 3. Therefore, the trial court did not err to the extent that it declined to consider whether the wrongful conduct rule applied and did not err when it examined whether the evidence established that no reasonable jury could find that Landgraff was 50% or more at fault for the accident.

## 2. EVIDENTIARY SUPPORT

If the trial court determines that the moving party adequately asserted his or her motion under MCR 2.116(C)(10), it must next examine whether the moving party supported its motion with evidence, as required by MCR 2.116(G)(3). When the moving party fails to properly support its motion with evidence establishing that there was no genuine issue of fact, the burden of production does not shift to the nonmoving party and the trial court must deny the motion. *Grandberry-Lovette v Garascia*, 303 Mich App 566, 581; 844 NW2d 178 (2014). If the moving party adequately asserted and supported his or her motion, the burden shifts to the nonmoving party to establish that a genuine issue of disputed fact exists that must be submitted to the finder of fact. *Barnard Mfg*, 285 Mich App at 370. The trial court must then consider all the substantively admissible evidence proffered by the parties in the light most favorable to the nonmoving party to determine whether the evidence establishes a question of fact. *Maiden v Rozwood*, 461 Mich 109, 120-121; 597 NW2d 817 (1999). In doing so, the trial court is not permitted to assess the weight or credibility of the evidence. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). The trial court should only grant a motion under MCR 2.116(C)(10) when the evidence properly before the trial court—even when viewed in the light most favorable to the nonmoving party—shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Maiden*, 461 Mich at 120.

The Legislature has determined that a person injured in an automobile accident may not recover noneconomic damages if the injured person is more than 50% at fault. See MCL 500.3135(2)(b) (stating that, for a cause of action under section (1), damages shall not be assessed in favor of a party who is more than 50% at fault) and (3)(b) (abolishing tort liability arising from the ownership, maintenance of use of a motor vehicle except as provided under sections (1) and (2)). Citing this statute, the Landgraffs argued that, even when the evidence is

viewed in the light most favorable to the O'Keefes, no reasonable jury could find that O'Keefe was not more than 50% at fault for the accident.

The Landgraffs supported this contention by referring to the statutes governing the right of way and applying those statutes to the evidence cited in their summary of the facts. They first explained that O'Keefe had an obligation to make a full stop before proceeding onto Manor Road and had to yield the right of way to Landgraff because she was already traveling on Manor Road, citing MCL 257.652(1). The Landgraffs established the basic facts and conditions by citing Landgraffs' statement attached to the police report, the police report itself, and O'Keefe's deposition testimony. They acknowledged that O'Keefe testified that he came to a full stop, looked both ways, and did not see Landgraff because—he assumed—she was hidden by the utility trucks. They, however, argued that it was undisputed that O'Keefe had just entered Manor Road when Landgraff drove into him; they cited images from the police department and Shepardson's recreation of the view to establish that O'Keefe had just entered the road and had not yet begun travelling along Manor Road. Because MCL 257.634(1)(b) specifically authorized Landgraff to proceed around the utility vehicles and only required her to yield to oncoming traffic, the Landgraffs maintained that the evidence plainly established that O'Keefe did not have the right of way.

The Landgraffs then proceeded to examine the evidence of Landgraff's negligence. The Landgraffs conceded that there was evidence from which a reasonable jury could infer that Landgraff was exceeding the speed limit while passing the utility trucks. They similarly acknowledged that Shepardson opined that Landgraff should have been driving at 10 miles per hour under the circumstances and that, had she been driving at that speed, she would have been able to stop in time. They maintained, however, that this evidence was insufficient to avoid summary disposition. They supported this contention by citing Shepardson's testimony that, if O'Keefe had pulled up past the bushes as he claimed to have done, he would have been able to see Landgraff coming at any point along her path. Because he should have seen Landgraff and should have yielded the right of way to her without regard to her speed, they concluded, no reasonable jury could find that O'Keefe was not more than 50% at fault for the accident.

The evidence proffered by the Landgraffs, if left unrebutted, established that O'Keefe pulled in front of Landgraff very nearly at the point of impact. As such, this evidence established that Landgraff had already begun to pass the utility trucks by proceeding westbound in the lane dedicated for eastbound traffic, which she was legally permitted to do. See MCL 257.634(2)(b). Stated another way, the evidence showed that Landgraff was lawfully in the lane dedicated for eastbound traffic and passing the trucks before O'Keefe entered the eastbound lane. Because O'Keefe had not yet entered Manor Road when Landgraff began to go around the trucks, he was obligated to yield to Landgraff. See MCL 257.652(1). The evidence that he violated this statute established a rebuttable presumption of negligence. See *Zeni v Anderson*, 397 Mich 117, 129-136; 243 NW2d 270 (1976). Therefore, O'Keefe was presumptively negligent.

Landgraff had a duty to exercise "that degree of care and caution which an ordinarily careful and prudent person would exercise under the same or similar circumstances." *Zarzecki v Hatch*, 347 Mich 138, 141; 79 NW2d 605 (1956); MCL 257.627(1). And the evidence that she was exceeding the speed limit is evidence that she was negligent. *Zeni*, 397 Mich at 129-136. In

comparing the negligence of multiple parties who share fault, a jury must "consider the nature of the conduct of each person at fault and the extent of the causal relation between the conduct and the damages claimed." MCL 600.6304(2); see also *Lamp v Reynolds*, 249 Mich App 591, 598-600; 645 NW2d 311 (2002). Normally, whether O'Keefe was more than 50% at fault for his own injuries would be a matter for the jury. See *Lowe v Estate Motors Ltd*, 428 Mich 439, 455-461 (opinion by RILEY, C.J.), 476 (concurring opinion by BOYLE, J.); 410 NW2d 706 (1987). However, a court may decide the matter as one of law where reasonable minds could not differ as to the allocation of fault. *Lowe*, 428 Mich at 460-461; see also *Huggins v Scripter*, 469 Mich 898, 898-899; 669 NW2d 813 (2003) (holding that summary disposition was appropriate because the evidence showed that no driver would have had enough time to avoid the collision and, for that reason, no reasonable juror could find that the defendant was more at fault than the decedent). In order for a reasonable jury to assign fault to Landgraff, it would have to find that Landgraff's excessive speed was both the direct and proximate cause of the accident at issue. See *Lamp*, 249 Mich App at 599-600. Likewise, in order to find in the O'Keefes' favor, there would have to be evidence from which a reasonable jury could find that Landgraff was more at fault than O'Keefe for the accident. *Lowe*, 428 Mich at 460-461; *Huggins*, 469 Mich at 898-899.

In their motion for summary disposition, the Landgraffs relied heavily on our Supreme Court's decision in *DePriest v Kooiman*, 379 Mich 44, 46-47; 149 NW2d 449 (1967). In that case, our Supreme Court observed that a driver with the right of way does not normally have to assume that a subordinate driver will contest his or her right of way. *Id.* at 46. Rather, the driver with the right of way need only take reasonable steps to avert a collision once it becomes obvious or should become obvious that his or her right of way is being contested. *Id.* And if the evidence shows that, even had the driver with the right of way been driving prudently, he or she could not have avoided the accident, the driver with the right of way cannot be said to be negligent because he or she could not be the proximate cause of the accident. *Id.* at 47.

Although *DePriest* is informative, it does not appear to control here. The Court in that case cited with approval the proposition that an arterial driver cannot be the proximate cause of an accident occasioned by a subordinate driver's entry onto the highway where the arterial driver could not have avoided the accident while driving at a permissible speed. *Id.* at 47. Because there is evidence from which a reasonable jury could conclude that Landgraff was driving at an unlawful and unreasonable speed and that her speed caused the accident to some degree, this rule does not apply.

The same is true of the Landgraffs' reliance on *McGuire v Rabaut*, 354 Mich 230; 92 NW2d 299 (1958). In that case, our Supreme Court held that a driver cannot be at fault for an accident as a matter of law if the facts show that the driver was driving at a lawful speed and in a lawful manner and, even if he or she had not been negligent in his or her observations, the driver could not have stopped in time avoid the collision. *Id.* at 239-240. Because there was evidence that Landgraff was not driving lawfully and not operating her vehicle in a reasonable manner at the time, the rule stated in *McGuire* does not directly control.

The question in this case is not whether Landgraff bears some level of fault for the accident, it is whether the facts—as determined by the parties' submissions and viewed in the light most favorable to the O'Keefes—are sufficient to permit a reasonable finder of fact to find that Landgraff was at least equally at fault for the accident.

-6-

Viewing the evidence in the light most favorable to O'Keefe, this Court must accept O'Keefe's testimony that he pulled forward far enough to see all the way down Manor Road and yet did not see Landgraff approaching when he looked to his right. *Maiden*, 461 Mich at 120. Although he speculated that she must have been behind the utility trucks, there is no evidence that the utility trucks in fact blocked his view. Indeed, as pointed out by the Landgraffs in their motion, the O'Keefes' own expert, Shepardson, testified that O'Keefe should have been able to see Landgraff had he in fact pulled forward beyond the bush. There is also no evidence that Landgraff's speed was so excessive that she travelled from a place of concealment to the point of impact in the time between O'Keefe's last look to the right and his act of moving into the right of way. If left unrebutted, these facts establish that O'Keefe should have been able to see Landgraff, but did not for some reason, and then started to enter Manor Road just as Landgraff completed passing the trucks. O'Keefe had the obligation to ensure that there was no oncoming traffic in the right of way before proceeding and the evidence that he should have seen Landgraff, but did not, established that the steps he took to ensure that there was no oncoming traffic before proceeding were insufficient. Given the evidence that O'Keefe pulled in front of Landgraff at the very moment she encountered the driveway's approach and without taking adequate steps to ensure that there was no oncoming traffic, we conclude that the Landgraffs' presented evidence that no reasonable juror could find that Landgraff's speed was 50% or more the cause of the accident. The Landgraffs properly supported their motion for summary disposition and were entitled to summary disposition unless the O'Keefes came forward with evidence permitting a reasonable jury to find that Landgraff was 50% or more at fault. *Barnard Mfg*, 285 Mich App at 370.

In response to the Landgraffs' motion, the O'Keefes' relied on the evidence—Landgraff's statement to the police officers and Shepardson's calculations—that Landgraff was driving in excess of the speed limit and Shepardson's opinion that Landgraff would have been able to stop before hitting O'Keefe had she been travelling at that speed. Shepardson did opine that Landgraff could have stopped had she gone around the utility vehicles at 10 miles per hour, which he stated was a reasonable speed. Nevertheless, the undisputed evidence established that O'Keefe should have been able to see Landgraff whether she was traveling at 10 miles per hour or 35 miles per hour. His testimony that he did not see her—absent something more—does not permit an inference that his inability to see her was anything other than his own fault. And had he seen her, he easily could have avoided the accident by yielding the right of way, which he was required to do. Given this evidence, no reasonable jury could find that O'Keefe's fault was equal to or less than Landgraff's fault.

The O'Keefes also noted O'Keefe's testimony that, just before Landgraff struck him, he saw that she was looking at her cell phone. They did not, however, argue that Landgraff caused the accident by failing to keep a proper lookout. And there is no evidence that had she been looking, she could have avoided the accident. See *DePriest*, 379 Mich at 47 (stating that, even if a defendant driver were negligent, if the evidence shows that the driver could not have avoided the accident even if he had been driving with due care, it cannot be said that the driver proximately caused the accident).

On appeal, the O'Keefes assert that the trial court misinterpreted and misapplied the relevant statutory provisions. They first complain that the trial court erred when it applied MCL 257.652 to the facts of this case. That statute requires the driver of a vehicle that is about to enter

-7-

a highway from a driveway to make a full stop and yield to traffic: "The driver of a vehicle about to enter or cross a highway from an alley, private road, or driveway shall come to a full stop before entering the highway and shall yield right of way to vehicles approaching on the highway." *Id.* The O'Keefes maintain that this statute does not apply because O'Keefe was not "about to enter" Manor Road—he had already entered—when Landgraff struck him and, for that reason, had no duty to yield to her. The O'Keefes' strained construction ignores the fact that O'Keefe was "about to enter" Manor Road just moments before the accident and, under the plain language of the statute, had a duty *at that time* to yield the right of way to any vehicle approaching his position on the highway. He could not simply make a full stop and then "seize" the right of way by cutting off any approaching vehicles.

The undisputed evidence showed that the accident occurred nearly at the instant that O'Keefe entered Manor Road and that the point of impact was just past the utility trucks. Thus, the evidence shows that Landgraff had already begun maneuvering around the utility trucks before O'Keefe entered Manor Road; as such, she was a vehicle approaching on the highway and O'Keefe had a duty to yield to her. MCL 257.652.

The O'Keefes offer a similarly meritless argument that Landgraff was required under MCL 257.634 to yield to O'Keefe before proceeding around the utility trucks. Landgraff had a duty to use the right lane while driving westbound on Manor Road. MCL 257.634(1). However, she also had the right to pass the utility trucks using the lane to her left—the lane for oncoming traffic; the statute provides that a driver may cross to the left half of a roadway "[w]hen the right half of a roadway is closed to traffic while under construction or repair or when an obstruction exists making it necessary to drive to the left of the center of the highway." MCL 257.634(1)(b). Before doing so Landgraff to be sure had to "yield the right-of-way to an oncoming vehicle traveling in the proper direction upon the unobstructed portion of the roadway." MCL 257.634(1)(b).

The O'Keefes contend that, under the plain language of this statute, Landgraff had to yield to O'Keefe because he constituted oncoming traffic the moment he entered Manor Road. But O'Keefe not only had to be an "oncoming vehicle," he had to be an "oncoming vehicle travelling in the proper direction upon the unobstructed portion of the roadway." MCL 257.634(1)(b). A commonsense construction requires that this to be true *before* the driver passing to the left side of the highway may maneuver to the left. Here, the undisputed evidence showed that O'Keefe had not entered Manor Road before Landgraff began maneuvering around the utility trucks. He was not, therefore, an "oncoming vehicle travelling in the proper direction upon the unobstructed portion of the roadway." MCL 257.634(1)(b). Under the undisputed facts, Landgraff had properly moved into the left lane to pass the utility trucks at a time when there was no oncoming traffic in the left lane. For that reason, she did not have to yield to anyone and had the right to rely on the fact that any vehicles waiting to enter the right of way from a private drive were required to yield to her under MCL 257.652.

The trial court did not err in applying these statutes to the evidence submitted by the parties.

On appeal, the O'Keefes also argue that the trial court erred when it interpreted the statutes governing the right of way to effectively vest Landgraff with "a license to maim or harm other drivers irrespective of the circumstances at hand." The trial court did not, however, state that Landgraff had an absolute right to proceed on the left without regard to anyone's safety. It held that, even considering the evidence of Landgraff's negligence, no reasonable jury could find that she was 50% or more at fault for the accident. As the O'Keefes correctly state in their brief, even though she had the right of way, Landgraff had to drive with reasonable care and to keep her vehicle under such care as to avoid a collision, citing a jury instruction quoted with approval in *Corbin v Yellow Cab Co*, 349 Mich 434, 438; 84 NW2d 775 (1957). Nevertheless, it is also true that Landgraff—as the favored driver—did not have to slow down "to an insurer's rate of speed" as she passed the utility vehicles. *DePriest*, 379 Mich at 49. Rather, she had the right to assume that anyone awaiting entry onto Manor Road would comply with the requirements of the law and yield the way until she passed. See *McGuire*, 354 Mich at 235. She was not required "to have [her] car under such control as to be able to avoid collision with a subordinate driver coming illegally into [her] path." *Id.* at 236. That is, she did not have to exercise such care as to be able to come to a complete stop at any moment on the "theory that some reckless, or semiconscious, or suicidal subordinate driver will dispute [her] passage." *Id.* at 238.

There was no evidence in this case that Landgraff proceeded to maneuver around the utility vehicles with conscious disregard to the safety of any person or vehicle in the oncoming lane. Rather, the undisputed evidence showed that Landgraff proceeded around the utility vehicles under circumstances that did not require her to yield to any oncoming traffic or anticipate that any driver might suddenly and illegally come into her path. Further, although Shepardson opined that Landgraff should have been driving at a slower speed and could have avoided the accident—notwithstanding O'Keefe's illegal entry onto Manor Road—if she had been doing so, he arrived at this conclusion on the basis of his assumption that she would have been further back when O'Keefe entered Manor Road and would for that reasons have had more time to stop. Shepardson did not state that Landgraff would have been able to avoid hitting O'Keefe if she were driving at 10 miles per hour and he had pulled in front of her with the same distance between them. That is, the evidence did not establish that Landgraff's speed played the decisive role in the accident; it was, at most, a contributing factor to the severity of the accident.

The O'Keefes also make much of the fact that a person ordinarily has the right to assume that the driver of a vehicle will drive on the right side of the road. See *Fitzpatrick v Ritzenhein*, 367 Mich 326, 330; 116 NW2d 894 (1962). But it is also true that a person may under certain circumstances lawfully drive on the left side of the road and, when the circumstances show that a driver should be aware of that other drivers might be driving on the left side, that driver must exercise reasonable care when proceeding. See *Smith v Whitehead*, 342 Mich 542, 546-547; 70 NW2d 703 (1955). O'Keefe testified that he not only saw the utility trucks obstructing the westbound lanes, he himself passed them on the left just moments before the accident. He, therefore, was on notice that other drivers might also be lawfully passing those utility vehicles on the left and should have exercised reasonable care to ensure that the lane was clear before proceeding on Manor Road.

## III. CONCLUSION

Under the circumstances presented by the evidence in this case, the trial court did not err when it determined that no reasonable jury could assign Landgraff equal or greater fault for the accident. Consequently, it did not err when it determined that the O'Keefes' claims were barred under MCL 500.3135(2)(b).

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly
/s/ Amy Ronayne Krause