*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DARRIN HARPER,

        Plaintiff-Appellee,

v

LORENZO REED and GFL ENVIRONMENTAL
SERVICES, USA,

        Defendants-Appellants,

and

CWR II, INC,

        Defendant.

UNPUBLISHED
December 22, 2025
10:23 AM

No. 372692
Wayne Circuit Court
LC No. 23-015659-NI

Before: ACKERMAN, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

In this action arising from an automobile accident, defendants, Lorenzo Reed (Reed) and GFL Environmental Services, USA (GFL), appeal by leave granted[1] the order denying their motion for summary disposition in favor of plaintiff Darrin Harper. We reverse the order denying defendants' motion for summary disposition and remand for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

In December 2023, plaintiff filed a complaint against defendants arising from an automobile accident that occurred on January 18, 2023, at approximately 5:15 a.m. Specifically,

---

[1] *Harper v Reed*, unpublished order of the Court of Appeals, issued February 19, 2025 (Docket No. 372692).

plaintiff was driving a 2011 Ford Fusion, and Reed was driving a 2016 Mack 600. It was alleged Reed drove backward from a driveway across Ford Road in Garden City. Plaintiff was traveling east on Ford Road when a collision occurred between their vehicles. The front of plaintiff's vehicle collided with the rear of defendants' vehicle, purportedly causing plaintiff to sustain serious physical injuries. Count I of the complaint alleged negligence or gross negligence by Reed for failing to operate and control his vehicle with due care and contrary to multiple violations of the Motor Vehicle Code. In count II, plaintiff asserted owner's liability against CWR II, Inc (CWR), claiming that it was the owner and/or registrant of the vehicle and consented to Reed's operation of the vehicle. Under MCL 257.401, CWR purportedly was responsible for Reed's negligence, gross negligence, or reckless conduct in driving the vehicle.[2] Count III of the complaint raised a claim of vicarious liability against GFL. Reed was allegedly an employee of GFL and acting within the scope of that employment at the time of the accident. Plaintiff submitted that GFL was responsible for Reed's negligence, gross negligence, and reckless conduct.

In May 2024, defendants moved for summary disposition under MCR 2.116(C)(10). Although plaintiff claimed that Reed was negligent and that GFL was responsible through owner's and vicarious liability, defendants alleged the facts established that plaintiff was more than 50% at fault for causing the accident. Moreover, plaintiff's breach of duty to exercise ordinary and reasonable care caused his injuries. That is, the video evidence established that there was no genuine issue of material fact regarding the cause of the accident, entitling defendants to judgment as a matter of law. Specifically, on January 18, 2023, at 5:15 a.m., plaintiff was driving to work by traveling on Ford Road. Reed had just serviced a dumpster at a business off Ford Road and backed out of the parking lot. Reed entered the first lane of travel on Ford Road when a passenger vehicle approached. Reed stopped and the passenger vehicle passed without incident. Reed was about to continue backing up when he observed a second passenger vehicle approach. Reed remained stationary, but plaintiff took no evasive action and drove his own vehicle directly into the rear of defendants' vehicle. A third vehicle was traveling behind plaintiff's vehicle. This third vehicle stopped before the accident scene, demonstrating that defendants' vehicle was clearly visible. Defendants alleged that the collision was captured on surveillance video from a local car dealership. And defendants claimed that plaintiff told the investigating officer that he did not see defendants' vehicle before the collision.

In support of summary disposition, defendants presented the affidavit of accident reconstructionist Sebastian van Nooten, who concluded that plaintiff had sufficient time to brake normally and avoid the accident. Defendants acknowledged that Michigan's negligence scheme allowed for damage assessment premised on comparative fault, but no damages were to be assessed in favor of a party that was more than 50% at fault. And damages generally present a

---

[2] In February 2024, plaintiff filed a motion for execution of a stipulated order. Plaintiff asserted that, after filing the complaint, it was learned the CWR was an expired entity as of 2017 and GFL was a successor in interest. Consequently, the parties stipulated to set aside the default of CWR, dismiss CWR without prejudice, substitute GFL for CWR in the owner's liability count of the complaint, and allow GFL 14 days to answer the complaint.

question for the jury unless reasonable minds could not differ. Here, reasonable minds could not differ in light of the evidence, including the surveillance video.

And although plaintiff may have had the right-of-way when traveling on Ford Road, he had to exercise reasonable care under the circumstances when encountering Reed as a subordinate driver. A plaintiff that failed to employ the proper precautions under the circumstances was guilty of contributory negligence and not entitled to any recovery. This included drivers that were distracted and failed to take evasive action. No reasonable juror could find that defendants were more at fault than plaintiff. Reed was not negligent and acted as a reasonably prudent person would under the circumstances. It was plaintiff that failed to exercise due care under the circumstances. He drove erratically, failed to brake, and accelerated prior to impact. In light of the surveillance video and the opinion of defendants' expert, plaintiff caused the accident, and therefore, reasonable minds could not differ that plaintiff was more than 50% at fault. With the dispositive motion, defendants submitted as exhibits: (1) the video surveillance of the accident, and (2) the affidavit of accident reconstructionist van Nooten.

In June 2024, plaintiff moved to adjourn defendants' summary disposition hearing and to allow amendment of the complaint. Plaintiff sought to engage in additional discovery before responding to the dispositive motion and claimed to demonstrate good cause to warrant an adjournment. Additionally, plaintiff sought to amend the complaint to account for Reed's deposition testimony and add additional allegations of negligence. Specifically, Reed was not given enough room to turn the GFL truck around in the customer's parking lot, causing him to back out. The photographs suggested that Reed failed to see plaintiff before the crash and he violated plaintiff's right-of-way. Moreover, GFL policies reflected that it had the right to refuse to pick up from customer containers that were placed in unsafe locations. In the amended complaint, plaintiff raised counts (I) negligence against Reed; (II) vicarious liability against GFL; (III) owner's liability against GFL; and (IV) negligence against GFL.

Defendants generally opposed plaintiff's motion to adjourn but sought to engage in additional discovery if amendment of the complaint was granted. In June 2024, the trial court entered an order granting plaintiff's motion to amend his complaint, denying the motion to adjourn defendants' motion for summary disposition, and granting additional discovery pertaining to the new allegations.

In July 2024, plaintiff filed a brief in opposition to defendants' dispositive motion. Although defendants alleged that plaintiff could have seen defendants' truck in time to avoid the accident, the argument was equally plausible when applied to defendants. That is, Reed additionally "had time to avoid" plaintiff. More importantly, plaintiff had the right-of-way and Reed violated that right-of-way. Each party had equal opportunity to avoid the crash such that a reasonable juror "might" find Reed more than 50% negligent. This was particularly plausible because Reed admitted that he never saw plaintiff's vehicle before the crash. However, plaintiff testified[3] that he saw Reed in the roadway only after there was insufficient time to avoid the crash.

_____

[3] Although the brief raised claims about plaintiff's testimony, it was not quoted in the brief and it was not attached as an exhibit to the response in opposition to defendants' motion for summary

Furthermore, plaintiff amended his complaint to raise allegations of negligence against GFL for servicing dumpsters that were placed unsafely, causing trucks to back up into a busy roadway. Therefore, the jury would now allocate negligence among three parties, thereby decreasing the likelihood that plaintiff could be found to be more than 50% at fault.

Plaintiff claimed that the surveillance video showed that Reed violated plaintiff's right-of-way. Additionally, Reed entered the roadway only three seconds before the impact. The facts indicate that plaintiff "had just awoken and was on his way to work at about 5:00 a.m.," and there were "many assorted lights" surrounding the roadway as well as those from defendants' truck. In light of those circumstances, "a reasonable juror could understand how Plaintiff might not notice a truck that was not even on the roadway until seconds before the impact and until it was too late to avoid the impact." Plus, Reed admitted that he did not see plaintiff's vehicle and a second vehicle such that it could be concluded that he was not paying attention to traffic. Moreover, Reed backed the GFL truck into traffic because there was no way to service the customer's dumpster in light of its placement in the parking lot. The customer, American Transmissions, subsequently moved its dumpster to a different location. Further, plaintiff recently discovered that GFL may refuse to service a customer with an unsafely placed dumpster.

Plaintiff asserted that Reed should have seen plaintiff in time to avoid the crash and should not have violated plaintiff's right-of-way. Plaintiff should not be judged by the fact that he had only three seconds to perceive the danger, decide on an action, and execute it. Although plaintiff may have given a statement to the police, it was not substantively admissible because police reports generally constitute inadmissible hearsay. Similarly, defendants' expert's affidavit failed to account for human factors and visibility issues such that it was of little or no probative value. And by statute, the allocation of comparative negligence presented an issue for the trier of fact. The evidence was sufficient to create a genuine issue of material fact regarding the appropriate allocation of negligence. With the answer, plaintiff submitted as exhibits: (1) a still photograph from the surveillance video; (2) the police traffic crash report (UD-10); (3) Reed's deposition transcript; (4) a photo showing plaintiff's vehicle crashed into the GFL truck with the front of the vehicle under the GFL truck; (5) Google photographs from November 2023 purportedly reflecting the dumpster's movement to a different location; (6) GFL policy addressing container placement; and (7) three notices of deposition to GFL.

In July 2024, defendants replied with concessions that Reed was backing the GFL vehicle onto Ford Road when the accident occurred and that under normal circumstances plaintiff had the right-of-way. Nonetheless, defendants asserted that a party with the right-of-way owed a duty to be free from comparative or contributory negligence. If a driver observed an automobile in the intersection but then proceeded without yielding to the oncoming vehicle, the driver was not free from contributory negligence. Rather, a plaintiff must employ the proper precautions. Plaintiff admitted that he did not see the GFL truck but he was not entitled to lower his head and proceed blindly through the intersection relying on the right-of-way and the role of the favored driver. In this case, plaintiff failed to yield to defendants' vehicle, crashed into the vehicle, and failed to take

_____

disposition. There is no indication that plaintiff's deposition testimony or an affidavit were submitted in the lower court record.

evasive action such as braking or changing lanes. Furthermore, defendants' motion should be granted for plaintiff's failure to timely serve his witness list and for the failure to produce his vehicle for inspection. Defendants requested summary disposition in their favor.

After hearing oral argument on the dispositive motion, the trial court denied it, holding:

> I'm not so convinced that the video itself establishes that Plaintiff is greater than 50% at fault for the accident, I do tend to think that this is a jury call. So I think it's a question of fact for the jury who's responsible and whether Plaintiff was more than 50% at fault.

> The video is great though, I'm glad that we very rarely get them[.] [T]hat will help the jury certainly, but let's move back. So the motion's denied[.]

In July 2024, the trial court entered an order denying defendants' motion for summary disposition for the reasons stated on the record. Defendants moved for reconsideration, claiming that palpable error was established because plaintiff misconstrued Reed's testimony. The trial court denied defendants' reconsideration motion. As noted, we granted defendants' application for leave to appeal.

## II. ISSUE PRESERVATION

"In civil cases, Michigan follows the 'raise or waive' rule of appellate review." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023) (quotation marks and citation omitted). To preserve an issue for appellate review, the party claiming error must show that the issue was raised in the trial court. *Id*. If a litigant failed to raise an issue in the trial court, there is no requirement that the Court of Appeals examine the issue. *Id*. And, the challenge to the error raised in the trial court must be the same error claimed on appeal. *Id*.

In this case, defendants moved for summary disposition contending that plaintiff's claims were barred because he was more than 50% at fault for the accident. The trial court denied the motion. This issue is preserved.[4]

## III. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Girimonte v Liberty Mut Ins Co*, 348 Mich App 768, 773; 19 NW3d 921 (2023). A motion for summary disposition premised on MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Id*.

---

[4] On appeal, plaintiff argues this Court should not entertain defendants' arguments pertaining to MCL 257.627(1) or the sudden emergency doctrine because they were not argued in the original dispositive motion filed in the trial court. We conclude that those claims are not dispositive of this appeal. Even so, we note that plaintiff similarly raised arguments not presented in the trial court on appeal, including challenging the foundation for the surveillance video and the foundation of defendants' expert affidavit.

-5-

The moving party must identify and support the issues to which the moving party believes there is no genuine issue of material fact, and the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted with the motion must be examined. *Pittsfield Charter Twp v Washtenaw Co Treasurer*, 338 Mich App 440, 449; 980 NW2d 119 (2021). Once the moving party makes and supports its motion, the opposing party may not rest on mere allegations or denials in the pleadings, but must submit documentary evidence setting forth specific facts to demonstrate a genuine issue for trial. *Id.*

## IV. ANALYSIS

Defendants allege that the trial court erred in denying their motion for summary disposition because the undisputed evidence demonstrated that plaintiff was more than 50% at fault for the accident. We agree.

To establish a prima facie case of negligence, a plaintiff must generally demonstrate: "(1) a duty owed by the defendant to the plaintiff, (2) breach of that duty by the defendant, (3) damages suffered by the plaintiff, and (4) that the damages were caused by the defendant's breach of duty." *Composto v Albrecht*, 328 Mich App 496, 499; 938 NW2d 755 (2019). Normally, whether a defendant owes a duty of care to a plaintiff presents a question of law for the court to determine. *Hill v Sears, Roebuck & Co*, 492 Mich 651, 659; 822 NW2d 190 (2012); *Sabbagh v Hamilton Psychological Servs, PLC*, 329 Mich App 324, 348; 941 NW2d 685 (2019). "Duty is the legal obligation to conform one's conduct to a particular standard to avoid subjecting others to an unreasonable risk of harm." *Composto*, 328 Mich App at 499 (citation omitted). This duty, typically described as an ordinary negligence standard of care, requires that a defendant exercise ordinary care to a plaintiff in light of the circumstances. *Id.* at 499-500.

"Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Brown v Brown*, 478 Mich 545, 552; 739 NW2d 313 (2007) (quotation marks and citation omitted). To determine whether a duty exists, the court may consider factors such as the foreseeability of the harm, the degree of certainty of injury, the close connection between the conduct and the injury, any moral blame correlated to the conduct, the policy of preventing future harm, and the burdens and consequences of imposing a duty and liability for a breach. *Id.* at 553 (citation omitted).

Once the duty element of a negligence action is established, the breach of duty requirement must be examined. Generally, the trier of fact then decides, whether, in light of the particular facts of the case, a breach of the duty occurred. *Meyers v Rieck*, 509 Mich 460, 472; 983 NW2d 747 (2022). Thus, the fact-finder renders a determination regarding what constitutes reasonable care under the circumstances. *Id.*; see also *Riddle v McLouth Steel Products Corp*, 440 Mich 85, 96; 485 NW2d 676 (1992) ("Once a defendant's legal duty is established, the reasonableness of the defendant's conduct under that standard is generally a question for the jury." (citation omitted.)).

Comparative negligence is the standard adopted in Michigan to promulgate a fair system of apportionment of damages. *Id.* at 98. "Under this doctrine, a defendant may present evidence of a plaintiff's negligence in order to reduce liability." *Id.* Comparative negligence is an affirmative defense. *Id.* Questions regarding the reasonableness of a party's actions are relevant

to comparative negligence, not duty. *In re Skidmore Estate*, 500 Mich 967; 892 NW2d 376 (2017). Although reasonableness generally presents a jury question, if reasonable minds could not differ, a court may determine whether a defendant's conduct fell below the applicable standard of care. See *Case v Consumers Power Co*, 463 Mich 1, 7; 615 NW2d 17 (2000); *Dextrom v Wexford Co*, 287 Mich App 406, 429; 789 NW2d 211 (2010) ("If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court."); *Laier v Kitchen*, 266 Mich App 482, 496; 702 NW2d 199 (2005) ("The standards for determining the comparative negligence of a plaintiff are the same as those of a defendant—the jury must consider the nature of the conduct and its causal relationship to the damages—and the question is one for the jury unless all reasonable minds could not differ or because of some ascertainable public policy consideration.").

Generally, when applying the doctrine of comparative negligence, a plaintiff's damages are reduced to the extent a plaintiff's own conduct contributed to his or her injuries. See MCL 600.2959; *Laier*, 266 Mich App at 496. However, a plaintiff may not recover noneconomic damages when a plaintiff's fault is greater than the aggregate fault of the others involved. MCL 600.2959; see also MCL 500.3135(2)(b) ("Damages must be assessed on the basis of comparative fault, except that damages must not be assessed in favor of a party who is more than 50% at fault."). Indeed, "the happening of the accident alone is not evidence of negligence of the defendant sufficient to take that question to the jury." *Gardiner v Studebaker Corp*, 204 Mich 313, 316; 169 NW 828 (1918).

"In the absence of statutory requirements, it is the motorist's duty in the use and operation of his automobile to exercise ordinary and reasonable care and caution, that is, that degree of care and caution which an ordinarily careful and prudent person would exercise under the same or similar circumstances." *Zarzecki v Hatch*, 347 Mich 138, 141; 79 NW2d 605 (1956) (citation omitted). "One is not negligent merely because he fails to make provision against an accident which he could not reasonably be expected to foresee." *Hale v Cooper*, 271 Mich 348, 354; 261 NW 54 (1935). "It was not incumbent upon the defendants to guard against every conceivable result, to take extravagant precautions, to exercise undue care: but defendants were entitled to assume that others using the highway in question would under the circumstances at the time use reasonable care themselves and take proper steps to avoid the risk of injury." *Id*.

> [A] driver on an arterial highway is entitled to assume that subordinate drivers will yield him the right-of-way. He is not bound to anticipate unlawful or negligent acts on their part. At the same time, however, the favored driver must conform to the standard of due care imposed upon him as well as the rest of mankind, namely, that he shall exercise reasonable care for his own protection. . . .
>
> It is clear, at the one extreme, that the favored driver is not permitted to lower his head, close his eyes, and charge blindly through intersections on the theory that such is his "right" simply because he is the favored driver. . . . The favored driver's rights are not so broad. It remains his duty to exercise reasonable care under the circumstances.

* * *

The favored driver is thus not required to have his car under such control as to be able to avoid collision with a subordinate driver coming illegally into his path. At what point, then, does the second principle (that of exercising reasonable care for his own protection) come into operation, requiring him to take steps to avoid collision with a subordinate driver? Only at that point when his continuing observations (which he must make, despite the fact that he is on an arterial highway) reveal, or should reveal to the reasonably prudent man, an impending danger. It is at this time that his duty of care with respect to the subordinate driver arises, and his post-observation negligence, or lack thereof, is measured by his actions after this point. Consequently, in the case before us the favored driver was entitled to assume, as he approached the Hastings intersection, that his right-of-way would not be contested by a subordinate driver. He was entitled to rely upon this assumption until it became clear to him (or, until, as a reasonable man, considering pertinent surrounding circumstances of traffic and terrain, it should have been clear to him) that a subordinate driver was going to challenge or obstruct his right-of-way. At this point his duty to attempt to avoid the impending collision began. It is from this point onward, and not before, with respect to a crossing subordinate driver appearing in his path, that we scrutinize his acts to determine whether or not he is guilty of negligence for failure to act as a reasonably prudent person, and in all fairness to him, we must measure his conduct in light of the emergency then presented, if not of his making. [*McGuire v Rabaut*, 354 Mich 230, 234-236; 92 NW2d 299 (1958).]

To come within the application of the sudden emergency doctrine, the sudden emergency must not arise from the defendants' own making and the emergency involves a situation that is "unusual or unsuspected." *Vander Laan v Miedema*, 385 Mich 226, 231-232; 188 NW2d 564 (1971) (quotation marks and citation omitted). An unusual event typically involves something that "varies from the everyday traffic routine." *Id*. at 232. An "unsuspected" event may arise from a potential peril within the daily movement of traffic. But the narrow confines of an unsuspected event require that the potential peril not be in clear view for any significant period of time and was totally unexpected. *Id*.

In the present case, defendants submitted a surveillance video of the accident. In this video, Reed is seen backing up the GFL truck. Two cars pass by and avoid any collision with the GFL truck. However, plaintiff's vehicle enters the frame and makes no effort to slow down or turn to avoid colliding into the GFL truck. That is, there is no indication that plaintiff took evasive action to avoid the accident. Plaintiff's vehicle actually collides under the GFL truck. Then, another vehicle approaches and stops before driving around the GFL truck and plaintiff's car.

Additionally, in the traffic crash report, plaintiff purportedly gave a statement to the investigating officer and "stated that he did not see Unit 1 [the GFL truck] backing out of the driveway and struck Unit 1."[5]

Plaintiff contends that the police report with plaintiff's purported admission was inadmissible as hearsay and questions the foundation for the surveillance video. Although the trial court may only consider substantively admissible evidence when examining a motion for summary disposition under MCR 2.116(C)(10), the evidence does not need to be in admissible form. *Airgas Specialty Products v Mich OSHA*, 338 Mich App 482, 513; 980 NW2d 530 (2021). Thus, the evidence, as submitted, was sufficient for consideration under MCR 2.116(C)(10). And it could be argued that the statement by plaintiff was an admission by a party opponent. See MRE 801(d)(2)(A). Moreover, as more fully set forth below, plaintiff ignores the fact that Reed testified that plaintiff acknowledged that he was distracted and apologized to Reed after the accident. We conclude that defendants presented evidence to support their contention that plaintiff was at fault for the accident in light of the video and the police report, and plaintiff failed to present admissible documentary evidence to create a genuine issue of material fact for resolution by a jury.

Defendants also presented the deposition testimony of Reed. On January 18, 2023, Reed was employed by GFL, working Monday through Friday from 4:00 a.m. to 2:30 p.m. On that date, Reed was involved in an accident on Ford Road at approximately 5:15 a.m. while driving GFL's 2016 Mack 600. He did not have his own route; instead, he worked a "swing route" and could not recall how many times he had serviced the route's locations, if at all. Reed arrived at a business, although he could not recall if it was American Transmissions, and emptied the dumpster. The GPS system in the truck identified the particular dumpster that needed to be serviced. Reed then proceeded to back out of the parking lot onto Ford Road. Because of the location of the dumpster, Reed could not pull forward to turn around. He was issued a ticket for the incident, but it was "lowered" to impeding traffic and he paid a fine.

Reed testified that regardless of whether backing or pulling out the GFL truck, as the driver, he had to "inch out to then allow the [other] cars can see you, you know, to see you, because it's a blind spot so you have to keep inching out, inching out and, you know watch your mirrors, and you always have to be safe." Reed could not confirm that it took longer to back out of a location instead of pulling forward, noting that it was contingent on the traffic. In either case, Reed opined that he had to inch out of a location to allow cars to see the truck. He testified that truck drivers were supposed to yield to cars and wait until traffic was completely clear. On Ford Road, there were two lanes of travel each way and a turn lane.

Reed employed "safe backing" which involved inching out into traffic every three seconds, backing up no faster than two miles per hour, and using his cameras and mirrors to perform "a 360" around the truck. The cameras showed the back and sides of the GFL truck. For example, in this accident, Reed inched straight back out into the first lane of traffic by using "safe backing." He saw the first car approaching and gave that driver time to either stop or react because Reed was

---

[5] Plaintiff notes that Reed was issued a traffic citation, recognized that he impeded traffic, and paid a fine. There is no indication that the investigating officer saw the surveillance video. And plaintiff fails to equate a driving infraction to negligence principles.

not covering both lanes of travel. The first car drove around. Then plaintiff hit Reed's truck. Plaintiff "ran straight into the back of" the GFL truck. Reed testified that the conditions were "clear," but he was unsure if the roads were wet. Reed opined that only one car passed him before the accident. Initially, when asked whether Reed saw plaintiff's vehicle before the accident, he responded, "You know, I seen the one vehicle go around me and then the vehicle hit me just smack dead into me and just, you know." When asked again if Reed saw plaintiff's vehicle before it hit the GFL truck, he responded, "No." Reed testified that plaintiff's vehicle hit the side of the truck, but it then went under the truck. Reed was not "moving" but was stationary when plaintiff's car impacted the truck, and Reed did not hit plaintiff.

Reed stated that he did nothing to cause or contribute to the accident. He opined that plaintiff caused or contributed to the accident because he was distracted by his phone. Reed testified that plaintiff "when he got out of the car he admitted to being distracted to me and he was very apologetic." Plaintiff said, "I'm sorry, I didn't see you." At the time of the accident, Reed testified that there were no obstructions limiting his view of Ford Road. Reed opined that the accident occurred in the lane closest to American Transmissions. He could not recall if the crash impact caused the GFL truck to move. Reed was not injured in the accident. Reed later encountered plaintiff when they both worked for Priority. At that time, plaintiff advised that his insurance did not pay for the accident because it found him to be at fault. In light of that information, Reed did not understand why the lawsuit was filed.

Reed's deposition testimony indicates that plaintiff was more than 50% at fault for the accident. Reed testified that he employed the "safe backing" manner of driving the GFL truck. This involved pulling forward or backward at a slow rate of speed, inching the vehicle forward or backward, and using the rear and side mirrors to obtain a "360" view of the surroundings. Reed was backing the vehicle out in the lane of travel. But, he stopped and two vehicles drove around the GFL truck without incident. Then, plaintiff drove directly into the GFL truck without any indication of reducing speed or steering away from the truck. Reed testified that the GFL truck was stationary at the time of the collision. When plaintiff exited his car, he apologized to Reed and indicated that he was distracted. Reed's testimony is generally confirmed by the surveillance video.

For the first time on appeal, plaintiff alleges that the credibility of Reed's testimony was at issue because he indicated that only one, not two vehicles, passed by him before the collision with plaintiff. Secondly, Reed testified that he backed the vehicle up in a straight manner. But plaintiff notes that the police report recorded that the GFL truck was angled. Again, these specific challenges were not raised in the trial court. And, in any event, plaintiff does not contend that the number of vehicles that passed by or the location of the truck were material issues pertaining to comparative fault. And once defendants made and supported their dispositive motion, plaintiff could not rest on mere allegations or denials in the pleadings, but was required to submit documentary evidence setting forth specific facts to demonstrate a genuine issue for trial. *Pittsfield Charter Twp*, 338 Mich App at 449. Curiously, plaintiff did not submit his own affidavit or deposition testimony to offer his position on how the accident occurred, the rate of speed that he was traveling, and why there was no indication in the surveillance video that he took evasive action. Thus, plaintiff did not submit documentary evidence to counter Reed's testimony and to create a contradictory version of events that required submission to a jury.

Additionally, defendants' expert, van Nooten, examined the traffic crash reports, 21 photographs, and the surveillance video taken from the dealership. He concluded:

11. The collision occurred approximately 13.89 seconds into the video. In the first four seconds, two eastbound vehicles passed behind the GFL truck. Mr. Reed stopped his rearward motion as the two vehicles went behind him, and then continued for a period of time, and then came to a stop again just prior to the collision.

12. The GFL truck had multiple flashing lights on its rear. The headlights and running lights were activated. There are street lights along both sides of Ford Road in this area. The Chevrolet dealership across the road is well illuminated, providing ambient light to the area of the collision.

13. The headlights of [plaintiff's] Fusion appear at approximately 10.34 seconds into the video. Therefore, the Fusion is visible for approximately 3.55 seconds before the collision. During the time the Fusion and its headlights are visible, there is no evidence that indicates [plaintiff] slowed prior to impacting the rear of the GFL truck. The front end of the Fusion did not pitch downward, a typical indication of the start of heavy braking. There is no evidence that indicates [plaintiff] steered prior to impact. The impact occurred when the Fusion was centered, or nearly centered, in the right lane.

14. The speed of [plaintiff's] Fusion could not be independently determined from the video. The posted speed limit on Ford Road is 40 mph. Ford Road in the area of the collision is straight and flat. The video starts with the GFL truck at the edge of Ford Road, and it is unknown how long it had been in that position or at what point it would have become visible to an eastbound driver in the position of [plaintiff]. If it is assumed that [plaintiff] was traveling at 40 mph (58.7 feet/second), the GFL truck would have been visible for at least 13.9 seconds (the length of the video). At 40 mph, [plaintiff] would have been at least 815 feet away when he could first see the GFL truck. The backing motion of the GFL truck after the two cars passed behind it would have been visible to [plaintiff] for at least 8.89 seconds. At 40 mph, [plaintiff] would have been over 520 feet away from the GFL truck when it started to back onto the roadway. The GFL truck's flashing lights and running lights would have been visible over this distance, making it an obvious hazard to an eastbound driver in the position of [plaintiff].

15. A driver using emergency braking of 0.7 g requires 76.3 feet to bring their vehicle to a stop from 40 mph. A driver using normal braking of 0.25 g requires 214 feet to bring their vehicle to a stop from 40 mph. A driver will travel 88 feet at 40 mph during a 1.5 second perception-response.

16. There was more than sufficient time and distance for [plaintiff] to perceive, respond, and undertake normal braking to avoid a collision.

17. Almost immediately after the collision, another eastbound vehicle approached the GFL truck and slowed to almost a stop before it came into view in the video. Its driver did not have any difficulty detecting the hazard in front of it.

18. If [plaintiff] had simply been attentive to the obvious hazard in his lane ahead, he could have responded by applying the brakes and bringing his vehicle to a controlled stop well before reaching the GFL truck like the vehicle that was following him did.

Again, in the trial court, plaintiff challenged this affidavit as self-serving. On appeal, plaintiff narratively contends that there is a limited foundation for van Nooten's opinion. However, there is no indication that plaintiff provided an affidavit or deposition testimony such that van Nooten could incorporate or dispel that information into his opinion. Further, plaintiff could have obtained a contrary expert opinion regarding the cause of the accident, as necessary to create a genuine issue of material fact, but he did not. Plaintiff also failed to obtain an expert affidavit to criticize the foundation or calculations rendered by van Nooten. And once defendants made and supported their dispositive motion, plaintiff could not rest on mere allegations or denials in the pleadings, but was required to submit documentary evidence setting forth specific facts to demonstrate a genuine issue for trial. *Pittsfield Charter Twp*, 338 Mich App at 449. Plaintiff simply narratively criticizes the evidence defendants offered in support of their motion for summary disposition. He failed to present documentary evidence through his own deposition testimony, affidavit, or expert opinion to create a genuine issue of material fact. Instead, plaintiff offered conjecture and speculation which was insufficient to create a genuine issue of fact for trial. *Meisner Law Group PC v Weston Downs Condo Assoc*, 321 Mich App 702, 723; 909 NW2d 890 (2017). The expert opinion by van Nooten clearly concluded that plaintiff was the cause of the accident and thereby more than 50% at fault. Accordingly, the trial court erred in denying defendants' motion for summary disposition.

It should be noted plaintiff repeatedly contends that he had the right-of-way. The right-of-way driver, however, cannot simply drive with impunity. Plaintiff was entitled to rely on the right-of-way until it became clear to him that Reed was going to challenge or obstruct his right-of-way. At this point plaintiff's duty to attempt to avoid the impending collision began. Thus, plaintiff's actions must be analyzed to determine whether or not he was guilty of negligence for failure to act as a reasonably prudent person, and in all fairness to him, we must measure his conduct in light of the emergency then presented, if not of his making. *McGuire*, 354 Mich at 236. However, plaintiff failed to offer any evidence to explain his actions or rather inaction.

Plaintiff references the fact that discovery was ongoing when defendants moved for summary disposition. Generally, summary disposition is premature when discovery on a disputed issue is incomplete. *Walrath v Witzenmann USA LLC*, 320 Mich App 125, 144; 904 NW2d 875 (2017). But an open period of discovery does not necessarily preclude summary disposition. The issue is whether additional discovery will stand a fair chance of uncovering factual support for the opposing party's position. *Id*. In the present case, plaintiff does not expressly identify what discovery was outstanding and what it would uncover. Even if plaintiff deposed representatives of GFL, plaintiff declined to provide the most substantively probative evidence, his own affidavit or testimony. That is, plaintiff did not offer any explanation as to what he saw before the accident, the speed at which he was traveling, any attempt to brake, any attempt to change lanes, or any

other factor that negated his own negligence.  Thus, the fact that discovery was still pending at the time of the decision does not preclude the grant of summary disposition.

Additionally, in the trial court, plaintiff challenged the placement of the dumpster that required Reed to back out of the parking lot.  Specifically, plaintiff contended that GFL's policy indicated that it could decline to service dumpsters and that the dumpster was later moved according to photographs obtained from Google maps.  "In any negligence case . . . a court must determine whether the defendant's negligence was a cause in fact of the plaintiff's injuries . . . ." *Ray v Swager*, 501 Mich 52, 65; 903 NW2d 366 (2017) (quotation marks and citation omitted). An assessment of proximate cause must also occur which requires an examination of whether it was foreseeable that the defendant's conduct could result in harm to the victim.  *Id*.  "A proper legal causation inquiry considers whether an actor should be held legally responsible for his or her conduct, which requires determining whether the actor's breach of a duty to the plaintiff was a proximate cause of the plaintiff's injury."  *Id*.  We conclude that it was not foreseeable that the placement of a dumpster could result in harm to plaintiff.

Reversed and remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Matthew S. Ackerman
/s/ Stephen L. Borrello
/s/ Anica Letica

-13-